IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ROB J. MCCOY,<br>PLAINTIFF, | § § § | |
| v. | § § |  |
| EXHIBITGROUP/GILTSPUR, INC. AND<br>VIAD CORPORATION, INC.,<br>DEFENDANTS; | § § § § | |
| AND | § § | |
| EXHIBITGROUP/GILTSPUR, INC. AND<br>VIAD CORPORATION, INC.,<br>COUNTERCLAIM-PLAINTIFFS, | § § § § | |
| v. | § § | CIVIL ACTION NO. 3: 03-CV-3050 P |
| ROB J. MCCOY, Individually, and as an<br>Officer and Director of Stak Design, Inc.<br>COUNTERCLAIM-DEFENDANT, | § § § § | |
| AND | § § | |
| EXHIBITGROUP/GILTSPUR, INC. AND<br>VIAD CORPORATION, INC.,<br>CROSSCLAIM-PLAINTIFFS, | § § § § | |
| v. | § § | |
| STAK DESIGN, Inc.; STANLEY<br>ZALENSKI, Individually, and as an Officer<br>and Director of Stak Design, Inc.; DONALD<br>ARIENT, Individually; DONALD BARKER,<br>Individually; JOHN BUHLER, Individually;<br>GARRY COHN, Individually; MICHELLE<br>HAMILL, Individually; SHANNON JUETT,<br>Individually; LOREN WAYNE KEOWN,<br>Individually; JOACHIM MOELLER,<br>Individually; ANDREW C. PLOEGER,<br>Individually; and MARJORIE STACY,<br>Individually, | § § § § § § § § § § § § § § | |
| CROSSCLAIM-DEFENDANTS. | § § | |

30619240.1
AMENDED ANSWER, COUNTERCLAIM, CROSSCLAIMS, APPLICATION FOR TEMPORARY
RESTRAINING ORDER, AND APPLICATION FOR TEMPORARY AND PERMANENT INJUNCTIONS

## AMENDED ANSWER, COUNTERCLAIM, CROSSCLAIMS, APPLICATION FOR TEMPORARY RESTRAINING ORDER, AND APPLICATION FOR TEMPORARY AND PERMANENT INJUNCTIONS

TO THE HONORABLE JUDGE OF SAID COURT

Exhibitgroup/Giltspur, Inc. ("Exhibitgroup") and Viad Corp., Inc[1]. ("Viad") hereby submit this their AMENDED ANSWER, COUNTERCLAIM, CROSSCLAIMS, APPLICATION FOR TEMPORARY RESTRAINING ORDER, AND APPLICATION FOR TEMPORARY AND PERMANENT INJUNCTIONS against Rob J. McCoy ("McCoy"), Stak Design, Inc. ("Stak"), Stanley Zalenski ("Zalenski"), Donald Arient ("Arient"), Donald Barker ("Barker"), John Buhler ("Buhler"), Garry Cohn ("Cohn"), Michelle Hamill ("Hamill"), Shannon Juett ("Juett"), Loren Wayne Keown ("Keown"), Joachim Moeller ("Moeller"), Andrew C. Ploeger ("Ploeger"), and Marjorie Stacy ("Stacy"), and in support thereof would show the Court as follows:

### I.
### STATEMENT OF THE CASE

1.  On or about December 1, 2003, McCoy filed against Exhibitgroup and Viad his "Original Petition for Declaratory Judgment" (sometimes hereinafter referred to as "Original Petition"), as well as his "Application for Temporary Restraining Order and Temporary Injunction." Said pleadings were filed in the 116th District Court of Dallas County, Texas.

2.  On or about December 17, 2003, Exhibitgroup and Viad filed in the State Court their "Verified Denial, Affirmative Defense and Original Answer to Plaintiff's Original Petition."

3.  On or about December 23, 2003, Exhibitgroup and Viad timely filed with this Court their "Notice of Removal."

30619240.1
AMENDED ANSWER, COUNTERCLAIM, CROSSCLAIMS, APPLICATION FOR TEMPORARY
RESTRAINING ORDER, AND APPLICATION FOR TEMPORARY AND PERMANENT INJUNCTIONS

PAGE 2

## II.
## AMENDED ANSWER

4.      Exhibitgroup and Viad admit the allegations contained in Section II.A. of the Original Petition.

5.      Exhibitgroup and Viad admit the allegations contained in Section II.B. of the Original Petition.

6.      Exhibitgroup and Viad admit the allegations contained in Section II.C. of the Original Petition.

7.      Exhibitgroup and Viad admit the allegations contained in Section III.A. of the Original Petition. However, Exhibitgroup and Viad state that since the filing of the Original Petition, the instant lawsuit has been timely and properly removed from State to Federal Court.  The United States District Court for the Northern District of Texas (Dallas Division) can appropriately exercise jurisdiction over the cause and parties herein.

8.      Exhibitgroup and Viad admit the allegations contained in Section III.B. of the Original Petition. However, Exhibitgroup and Viad state that since the filing of the Original Petition, the instant lawsuit has been timely and properly removed from State to Federal Court.  The United States District Court for the Northern District of Texas (Dallas Division) can appropriately exercise jurisdiction over the cause and parties herein.

9.      Exhibitgroup and Viad admit the allegations contained in Section III.C. of the Original Petition. However, Exhibitgroup and Viad state that since the filing of the Original Petition, the instant lawsuit has been timely and properly removed from State to Federal Court.  The United States District Court for the Northern District of Texas (Dallas Division) can appropriately exercise jurisdiction over the cause and parties herein.

---

[1] Defendant/Counterclaim-Plaintiff/Crossclaim-Plaintiff Viad Corp. was incorrectly identified/named as Viad Corporation, Inc. in the Original Petition herein.

10.     Exhibitgroup and Viad admit the allegations contained in the last paragraph of Section III. of the Original Petition (venue). However, Exhibitgroup and Viad state that since the filing of the Original Petition, the instant lawsuit has been timely and properly removed from State to Federal Court. The United States District Court for the Northern District of Texas (Dallas Division) can appropriately exercise jurisdiction over the cause and parties herein.

11.     Exhibitgroup and Viad admit the allegations contained in the first, second, third, and fourth sentences of the first paragraph of Section IV. of the Original Petition. With respect to the fifth sentence of the first paragraph of Section IV. of the Original Petition, Exhibitgroup and Viad aver that, in fact, McCoy was asked to sign the agreements referenced in said sentence at the same time he signed his offer of employment letter. Exhibitgroup and Viad otherwise deny the allegations contained in the fifth, and also the sixth sentences of the first paragraph of Section IV. of the Original Petition. The quoted portion of said paragraph needs no response.

12.     Exhibitgroup and Viad admit the allegations contained in first sentence of the second paragraph of Section IV. of the Original Petition. The quoted language in said paragraph needs no response.

13.     The quoted language in the third paragraph of Section IV. of the Original Petition needs no response.

14.     Exhibitgroup and Viad admit the allegations contained in the last paragraph of Section IV. of the Original Petition.

15.     Exhibitgroup and Viad deny that McCoy is entitled to anything set forth in Section V., "Relief Requested," in the Original Petition.

16.     Exhibitgroup and Viad deny that McCoy is entitled to attorney fees.

30619240.1
AMENDED ANSWER, COUNTERCLAIM, CROSSCLAIMS, APPLICATION FOR TEMPORARY
RESTRAINING ORDER, AND APPLICATION FOR TEMPORARY AND PERMANENT INJUNCTIONS

PAGE 4

17.  Exhibitgroup and Viad deny that McCoy is entitled to any remedies sought in the "Prayer" Section of the Original Petition.

18.  Exhibitgroup and Viad hereby deny anything in the Original Petition which has not heretofore specifically been admitted or denied.

## III.
## RESPONSE TO APPLICATION FOR TEMPORARY RESTRAINING ORDER AND TEMPORARY INJUNCTION

19.  Exhibitgroup and Viad deny that this Court has the power to enjoin them from filing a lawsuit in another jurisdiction.  However, because Exhibitgroup and Viad will not contest jurisdiction in this Court and agree that Texas law should be applied to these disputes, the issues raised by McCoy in his Application for Temporary Restraining Order and Temporary Injunction are moot.

## IV.
## COUNTERCLAIM AND CROSSCLAIMS

20.  **The Parties:**

a.  Viad is a Delaware corporation with its headquarters and principal place of business located in Phoenix, Arizona.

b.  Exhibitgroup is a division of Viad.  Exhibitgroup has its headquarters and principal place of business located in Roselle, Illinois.  Exhibitgroup has an office, plant, and warehouse located in Grapevine, Texas where McCoy, Zalenski, Arient, Barker, Buhler, Cohn, Hamill, Juett, Keown, Moeller, Ploeger, and Stacy were employed.

c.  Plaintiff/Counterclaim-Defendant McCoy is an individual who has his principal place of business located at 1540 Luna Road, Carrollton, Texas 75006, and his domicile and residence located at 1110 La Paloma Ct., Southlake, Texas 76092.

30619240.1
AMENDED ANSWER, COUNTERCLAIM, CROSSCLAIMS, APPLICATION FOR TEMPORARY
RESTRAINING ORDER, AND APPLICATION FOR TEMPORARY AND PERMANENT INJUNCTIONS

PAGE 5

d.      Upon information and belief, Crossclaim-Defendant Stak is a Texas corporation with its principal place of business located at 1540 Luna Road, Carrollton, Texas 75006.

e.      Crossclaim-Defendant Zalenski is an individual with his principal place of business located at 1540 Luna Road, Carrollton, Texas 75006 and his domicile and residence located at located at 1012 Hackberry Ct., Carrollton, Texas, 75007.

f.      Crossclaim-Defendant Arient is an individual with his principal place of business located at 1540 Luna Road, Carrollton, Texas 75006 and his domicile and residence located at 102 Pinewood Place, Lewisville, Texas 75067.

g.      Crossclaim-Defendant Barker is an individual with his principal place of business located at 1540 Luna Road, Carrollton, Texas 75006 and his domicile and residence located at 906 Spring Lake Drive, Garland, Texas 75043.

h.      Crossclaim-Defendant Buhler is an individual with his principal place of business located at 1540 Luna Road, Carrollton, Texas 75006 and his domicile and residence located at 1232 Pleasant Oaks, Lewisville, Texas 75087.

i.      Crossclaim-Defendant Cohn is an individual with his principal place of business located at 1540 Luna Road, Carrollton, Texas 75006 and his domicile and residence located at 5746 Winton Street, Dallas, Texas 75206.

j.      Crossclaim-Defendant Hamill is an individual with her principal place of business located at 1540 Luna Road, Carrollton, Texas 75006 and her domicile and residence located at 7513 Kingston Drive, Rowlett, Texas 75089.

k.   Crossclaim-Defendant Juett is an individual with her principal place of business located at 1540 Luna Road, Carrollton, Texas 75006 and her domicile and residence located at 8200 Forest Hill Blvd., Dallas, Texas 75218.

l.   Crossclaim-Defendant Keown is an individual with his principal place of business located at 1540 Luna Road, Carrollton, Texas 75006 and his domicile and residence located at 6501 Oakview Dr., Flower Mound, Texas 75022

m.   Crossclaim-Defendant Moeller is an individual with his principal place of business located at 1540 Luna Road, Carrollton, Texas 75006 and his domicile and residence located at 350 E. Vista Ridge Mall Dr. #1322, Lewisville, Texas 75067.

n.   Crossclaim-Defendant Ploeger is an individual with his principal place of business located at 1540 Luna Road, Carrollton, Texas 75006 and his domicile and residence located at 2710 Stone Creek Lane, Corinth, Texas 76201.

o.   Crossclaim-Defendant Stacy is an individual with her principal place of business located at 1540 Luna Road, Carrollton, Texas 75006 and her domicile and residence located at 2633 Jewett Road, Burleson, Texas 76028.

21.   **Venue:**

Venue is this cause is properly in the United States District Court for the Northern District of Texas, Dallas Division because: (a) all or a substantial part of the events or omissions giving rise to the claims in this lawsuit arose in this District and Division; (b) Viad and Exhibitgroup have their headquarters and principal place of business located in Arizona and Illinois, respectively; (c) Exhibitgroup has an office, plant, and warehouse located in this District; (d) Crossclaim-Defendant Stak is a Texas

30619240.1
AMENDED ANSWER, COUNTERCLAIM, CROSSCLAIMS, APPLICATION FOR TEMPORARY
RESTRAINING ORDER, AND APPLICATION FOR TEMPORARY AND PERMANENT INJUNCTIONS

PAGE 7

corporation with its headquarters and principal place of business located in this District; and (e) Counterclaim-Defendant McCoy, as well as Crossclaim-Defendants Zalenski, Arient, Barker, Buhler, Cohn, Hamill, Juett, Keown, Moeller, Ploeger, and Stacy all are individuals with their principal place of business, as well as their residence and domicile located within this District.

22. **Jurisdiction**:

This Court has jurisdiction over all parties to this lawsuit as Viad and Exhibitgroup do business in this District, and McCoy, as well as all Crossclaim-Defendants, resided in this District when one (1) or more of the causes of action arose.

23. **Choice of Law**:

Because the events giving rise to this lawsuit occurred largely in Texas, the disputes involved herein are governed by Texas law.

24. **Background**:

a.    Viad is a holding company that owns a variety of businesses, including Exhibitgroup.

b.    Exhibitgroup is a division of Viad and is engaged, among other things, in the business of designing, developing, manufacturing, selling, installing, servicing, marketing and warehousing exhibits for customers to use at conventions and tradeshows, as well as kiosks for shopping center malls.  T.L. Horton Company ("Horton") also was engaged in the kiosk business and was acquired by Exhibitgroup in 1998.

c.    Exhibitgroup's products are considered the "Cadillacs" of the industry.  It has both large and small customers who have given their business to Exhibitgroup for many years. Exhibitgroup has devoted much time, talent, energy, and financial resources into building and maintaining the goodwill it has with these customers.

30619240.1
AMENDED ANSWER, COUNTERCLAIM, CROSSCLAIMS, APPLICATION FOR TEMPORARY
RESTRAINING ORDER, AND APPLICATION FOR TEMPORARY AND PERMANENT INJUNCTIONS

PAGE 8

d.    Exhibitgroup also has invested much time, talent, energy, and financial resources in developing a significant amount of confidential/proprietary information and trade secrets. These include, without limitation:

1.    Lists that contain a variety of information about Exhibitgroup's exhibit and kiosk customers such as: (a) who these customers are and where they are located; (b) what customer personnel are involved in decision-making concerning Exhibitgroup's products; (c) how much money customers have placed in orders with Exhibitgroup in the past; (d) how much money customers are projected to spend on Exhibitgroup products in the future; (e) the volume of products purchased in the past, and expected to be purchased in the future from Exhibitgroup by its customers; and (f) the specific types and specifications of products purchased by these customers in the past, and expected to be purchased from Exhibitgroup in the future.

2.    Charts and schedules showing such things as: (a) the amount of total revenue projected from each customer and potential customer; (b) the amount of revenue projected from each customer and potential customer for construction of exhibits and kiosks, refurbishment of same, installation at malls, tradeshows and conventions; and (c) logistics.

3.    Price lists for each product produced and sold by Exhibitgroup. This includes prices for each part and accessory which could be built into or added onto the products, as well as retail merchandise price lists for such items.

30619240.1
AMENDED ANSWER, COUNTERCLAIM, CROSSCLAIMS, APPLICATION FOR TEMPORARY
RESTRAINING ORDER, AND APPLICATION FOR TEMPORARY AND PERMANENT INJUNCTIONS

PAGE 9

25.  **Specific Proprietary/Confidential Information and Trade Secrets**:

a.  **Forecasts and Sales Plans**:  Confidential/proprietary information and trade secrets here include both the forms themselves, which were developed by Exhibitgroup, and the information contained on them.  These consist of names of customers and potential customers, and, based on Exhibitgroup's dealings with these entities, knowledge of which ones are planning to purchase new kiosks or exhibits, or to upgrade shopping centers, which might include the refurbishment of old kiosks or the manufacture and sale of new ones.

b.  **Kiosks Body Types**:  Included in the confidential/proprietary information and trade secrets possessed by Exhibitgroup is knowledge of customer preferences in kiosks for their shopping mall properties as well as for tradeshow/convention exhibits, and the various body types of kiosks and exhibits owned by customers, along with the accessories which the customers have purchased.  From this information Exhibitgroup can target customers for new or different products and accessories.

c.  **Estimating Documents and Information**:  Additional confidential/proprietary information and trade secrets involved in this litigation are: (1) "Excel spreadsheets" which contain information concerning Exhibitgroup's different types of kiosks/exhibits and accessories; (2) information concerning proposals to customers for kiosks and exhibits, both those which have been successful and those which have not been successful in the past but might be in the future; (3) information about pricing of Exhibitgroup's products and its profit margins; (4) Project Approval Evaluation forms, upon which is recorded such information as how pricing of products is broken down into the various aspects of its costs

30619240.1
AMENDED ANSWER, COUNTERCLAIM, CROSSCLAIMS, APPLICATION FOR TEMPORARY
RESTRAINING ORDER, AND APPLICATION FOR TEMPORARY AND PERMANENT INJUNCTIONS

PAGE 10

(*e.g.*, construction, graphics, freight, rentals, storage, etc.), cost of sales (material, subcontracting, labor, manufacturing overhead, operating income, and the profit margin of each proposed customer project); (5) Price Analysis Reports which further refine Exhibitgroup's pricing of projects; and (6) inventories of kiosk parts, which allow Exhibitgroup efficiently to purchase items needed to be bought or manufactured for all kiosks, and also which expedite the production of typical units re-purchased by customers.

d.   **Small Part Lists**:  These documents record those parts required for the products sold to customers, organized by kiosk type. They constitute valuable confidential/proprietary information and trade secrets.

e.   **Financial Information**:  At great cost and effort, Exhibitgroup has developed specific documents and forms which it uses to record and track its financial performance, customer sales and profit margins, customer accounts receivables, and financial statements involving both Horton and Exhibitgroup.   These documents and techniques are valuable confidential/proprietary information and trade secrets.

f.   **Product Design Information**:  Over the years Exhibitgroup has developed, stored, and maintained, in a variety of formats, detailed product design information regarding its products.  This includes: (1) client preferences for material, functionality, and kiosk type; (2) design simplification information, as well as data which correct problems on earlier model runs; and (3) new accessories designed for and targeted to specialty mall leasing managers, which assist in the display of product and enhance revenue.  These designs and related information are valuable confidential/proprietary information and trade secrets.

30619240.1
AMENDED ANSWER, COUNTERCLAIM, CROSSCLAIMS, APPLICATION FOR TEMPORARY
RESTRAINING ORDER, AND APPLICATION FOR TEMPORARY AND PERMANENT INJUNCTIONS

PAGE 11

g.  **Computer Assisted Design Drawings and Information**: Exhibitgroup's confidential/proprietary information and trade secrets also include computer programs which it has developed and/or purchased and modified to meet its specifications, that are used to transition from product design to the manufacturing process. This includes "Computer Numeric Control" programs which automatically cut parts in the manufacturing process, both cheaply and expeditiously, once the computer-assisted design drawings are complete. Such drawings increase Exhibitgroup's product development speed and assist in inventory control.

h.  **Cut Tickets**: Exhibitgroup uses a system of "Cut Tickets" to document, organize and manage the data required by shop personnel to mill the substrates used in the manufacturing of its various products. Cut Tickets are in written and electronic form and contain specific information unique to each product to be manufactured. Possession of an Exhibitgroup Cut List would provide the information required to recreate a product or accessories requiring a specific relationship to that product such as replacement shelves or security covers. They are Trade Secrets.

i.  **Vendor Information**: Other confidential/proprietary information and trade secrets consists of lists of vendors with whom Exhibitgroup has longstanding relationships and understandings. This also includes prices charged to Exhibitgroup by vendors for various items and services, typical "lead times" for these vendors, and vendor capabilities which (among other things) can eliminate the necessity for Exhibitgroup to invest in certain shop equipment.

30619240.1
AMENDED ANSWER, COUNTERCLAIM, CROSSCLAIMS, APPLICATION FOR TEMPORARY
RESTRAINING ORDER, AND APPLICATION FOR TEMPORARY AND PERMANENT INJUNCTIONS

PAGE 12

j.    **Items Specific to the Exhibit Business**:  Included in the confidential/proprietary information and trade secrets owned by Exhibitgroup are such things as: (1) historical exhibit field service orders by customer, which give detailed cost and pricing information; (2) set-up drawings for customers' exhibits; (3) customer inventory lists, which combined with field service orders and set-up drawings, allow Exhibitgroup to quickly and efficiently erect exhibits at tradeshows and conventions; (4) previous client booth layouts, client inventory notebooks, and other information; (5) documents and information concerning third-party vendors who directly service the customer exhibits such as telephone set-ups, florists, and electrical work; and (6) information used by Exhibitgroup to assist customers in dealing with exposition service personnel and general contractors.

k.    **Mall Information**:  Exhibitgroup has developed a great deal of marketing and related information which includes mall layout, color and design scheme, age, target shopping market, store leases that govern kiosk numbers and placement, and the quality and type of kiosk currently owned by the customer (which would include those kiosks supplied by Exhibitgroup's competitors).  All of this constitutes confidential/proprietary information and trade secrets.

l.    **Standardized Internal Processes**:  Exhibitgroup has developed a wide variety of internal controls, policies, and procedures, etc., which ensure that employees receive correct and timely information.  This material is valuable confidential/proprietary information and trade secrets.

30619240.1
AMENDED ANSWER, COUNTERCLAIM, CROSSCLAIMS, APPLICATION FOR TEMPORARY
RESTRAINING ORDER, AND APPLICATION FOR TEMPORARY AND PERMANENT INJUNCTIONS

PAGE 13

m.  **Personnel Information**:  Among Exhibitgroup's most prized confidential/proprietary information and trade secrets is information concerning its employees.   Much of Exhibitgroup's business is segmented with various employees developing specialties in performing crucial functions.  For example, some have developed expertise in painting and cutting techniques.  Others are knowledgeable in assembly techniques and such things as cut tickets.  Still others have, at Exhibitgroup's great expense, developed and maintained relationships with customers, potential customers, and vendors.

n.  The valuable confidential/proprietary information and trade secrets detailed above will be collectively referred to hereafter as "Trade Secrets."

o.  Some of the above-described Trade Secrets were developed by Horton and its employees.  When Exhibitgroup acquired the assets of Horton, effective on or about April 1, 1998, it received exclusive rights to Horton's Trade Secrets.  The remaining Trade Secrets involved in this litigation were developed by Exhibitgroup and its employees.

26.  **Rob McCoy**

a.  McCoy was hired by Exhibitgroup on or about March 31, 1998.  As a condition to Exhibitgroup's written offer of employment (Exhibit 1) McCoy had to sign an "Employee Patent and Trade Secret Agreement," "Employee Confidential Information and Proprietary Interest Agreement," and a "Code of Corporate Conduct."

b.  Prior to being employed by Exhibitgroup, McCoy was an employee of Horton.

30619240.1
AMENDED ANSWER, COUNTERCLAIM, CROSSCLAIMS, APPLICATION FOR TEMPORARY
RESTRAINING ORDER, AND APPLICATION FOR TEMPORARY AND PERMANENT INJUNCTIONS

PAGE 14

c.    On or about April 13, 1998, McCoy signed an "Employee Handbook Receipt" (Exhibit 2) and agreed to abide by its contents.  In pertinent part, the Employee Handbook (Exhibit 3) states that he was bound by the Code of Corporate Conduct, was to avoid conflicts of interest, and could be terminated from misappropriating Exhibitgroup property, which would include documents and Trade Secrets.

d.    It was not until on or about December 4, 1998, that McCoy signed the "Employee's Patent and Trade Secret Agreement" (Exhibit 4) which, among other things, requires McCoy not to disclose, use, or divulge Exhibitgroup's Trade Secrets; to "use [his] best efforts and the utmost diligence to guard and protect said trade secrets;" and, after the termination of his employment, not to take any of Exhibitgroup's "records and papers and all matter of whatsoever nature which pertains to Exhibitgroup's business or which bears on [its] secret or confidential information."

e.    Also, on December 14, 1998, McCoy executed the "Employee Confidential Information and Proprietary Interest Agreement" (Exhibit 5) which had been tendered to him on March 31 of that year.  Among other things, in this Agreement McCoy acknowledged that: (1) the "identity and particular needs of [Exhibitgroup's] customers are not generally known in the. . . industry;" (2) Exhibitgroup has a "proprietary interest in its customer lists and the documents and information regarding pricing, costs, and the specialized requirements of [Exhibitgroup's] customers [which are] highly confidential and constitutes trade secrets;" (3) McCoy's employment and compensation depended, in part, on the Trade Secrets owned by Exhibitgroup; (4) Exhibitgroup would grant McCoy access to its Trade Secrets which "shall continue to be owned solely by Exhibitgroup and are [its] special and unique property;" (5) Exhibitgroup's Trade Secrets "are not general secrets of the trade nor public

30619240.1
AMENDED ANSWER, COUNTERCLAIM, CROSSCLAIMS, APPLICATION FOR TEMPORARY
RESTRAINING ORDER, AND APPLICATION FOR TEMPORARY AND PERMANENT INJUNCTIONS

PAGE 15

knowledge," although "they could be adopted for use by other businesses if made available to them;" (6) if McCoy misappropriated Exhibitgroup's Trade Secrets, such would "cause [it]" substantial damage; (7) during his employment with Exhibitgroup, and after, McCoy "will maintain in confidence and use [his] best efforts to preserve the confidentiality of all information held in confidence by [Exhibitgroup];" (8) McCoy will not remove any of Exhibitgroup's "books, records, documents, or customer lists, or any copies of such documents, without the written permission of Exhibitgroup;" (9) during his employment with Exhibitgroup and "for 12 months after [his] employment," McCoy "will not directly or indirectly solicit any employee, supplier, contractor, consultant or representative of [Exhibitgroup] to terminate their or its relationship with [Exhibitgroup];" (10) during his employment with Exhibitgroup, McCoy will "devote [his] best efforts to accomplishing tasks assigned to [him] and will not engage in any business or activity which is similar or which competes with [Exhibitgroup's] business;" and (11) if McCoy breaches any of the covenants in the Agreement, in addition to monetary and other damages, Exhibitgroup may apply for, and be granted, injunctive relief.

f.     On this same date, December 4, 1998, McCoy signed the "Employee Confidential Information, Non-Compete and Proprietary Interest Agreement" (Exhibit 6). This document contains some of the same trade secret restrictions and covenants detailed above in the "Employee's Patent and Trade Secret Agreement" (Exhibit 4), as well as the "Employee Confidential Information and Proprietary Interest Agreement" (Exhibit 5). The "Employee Confidential Information, Non-Compete and Proprietary Interest Agreement" (Exhibit 6), like the "Employee Confidential Information and Proprietary Interest Agreement" (Exhibit 5) contains: (1) a twelve (12) month restriction upon McCoy's ability

30619240.1
AMENDED ANSWER, COUNTERCLAIM, CROSSCLAIMS, APPLICATION FOR TEMPORARY
RESTRAINING ORDER, AND APPLICATION FOR TEMPORARY AND PERMANENT INJUNCTIONS

PAGE 16

to solicit Exhibitgroup's employees, suppliers, contractors, consultants, and representatives; and (2) a restriction from taking from Exhibitgroup any of its books, records, documents, or customer lists. This third Agreement, however, also contains a twelve (12) month restriction upon competition with respect to certain customers.

g.  Finally, on December 4, 1998, McCoy signed the "Viad Corp. Code of Corporate Conduct" (Exhibit 7). McCoy "accepted the codes" which included, *inter alia*, a prohibition from any employee engaging in "any outside business activity that: (1) Provides goods or services the same as, or similar to, those sold by the company; (2) Uses company business contacts or relationships; (3) Takes place on company time; [or] (4) Uses company information or resources. . . ."

h.  On or about July 9, 1999, McCoy signed a receipt for Exhibitgroup's "Always Honest Manual" (Exhibit 8), which provides in pertinent part (Exhibit 9) that he: (1) was prohibited from misappropriating competitors' trade secrets, the relationships which competitors have with employees, or the existing contracts which competitors have with their customers; (2) must protect Exhibitgroup's Trade Secrets and not use them for his "private interest;" (3) can never get into a conflict of interest, which includes becoming involved in a business where McCoy's "personal interests actually conflict or have the appearance of conflicting with those of [Exhibitgroup];" (4) cannot engage in any outside business activity that "provides goods or services which are the same as, or similar to those sold by the company;" (5) must not infringe on Exhibitgroup's Trade Secrets, misappropriate Exhibitgroup's Trade Secrets, or those belonging to a competitor; and (6) is required to avoid competing with Exhibitgroup or using his position for "improper personal gain. . . [and he must] preserve the confidentiality of nonpublic [Exhibitgroup]

30619240.1
AMENDED ANSWER, COUNTERCLAIM, CROSSCLAIMS, APPLICATION FOR TEMPORARY
RESTRAINING ORDER, AND APPLICATION FOR TEMPORARY AND PERMANENT INJUNCTIONS

PAGE 17

information . . . [and he must] protect [Exhibitgroup's] Trade Secrets, patents, trademarks, and copyrights, as well as its business, marketing and service plans, engineering and manufacturing ideas, designs, databases, records, salary information and any unpublished financial data and work-related activities by company personnel [and he must report anything that might] violate the law, [the Code of Ethics] and any other [Exhibitgroup] policy."

i.    On or about December 13, 1999, McCoy signed a "Use of Company-Owned and Issued Computer Systems Agreement" (Exhibit 10), which required him to treat as "strictly confidential" and "not to be shared with any person(s) or organization(s)" the information contained in Exhibitgroup's computer system.

j.    On May 8, 2003, and also on November 21, 2003, McCoy again pledged, in writing, to adhere to Exhibitgroup's "Always Honest Manual" (Exhibits 11 - 12).

k.    On or about December 1, 2003, McCoy resigned his employment with Exhibitgroup. At that time he held the position of Vice-President of Sales.

l.    McCoy was privy to all or most of the Trade Secrets detailed above. He also helped to develop many of said Trade Secrets while an employee of Horton and/or Exhibitgroup.

m.    McCoy had substantial contact with Exhibitgroup's customers and potential customers. He directed the development of proposals for customers and prospects; conducted and attended meetings with them; and negotiated details of bids, letters of intent, contracts for Exhibitgroup's products, etc.

30619240.1
AMENDED ANSWER, COUNTERCLAIM, CROSSCLAIMS, APPLICATION FOR TEMPORARY
RESTRAINING ORDER, AND APPLICATION FOR TEMPORARY AND PERMANENT INJUNCTIONS

PAGE 18

n.  On information and belief, beginning at least in the Fall of 2003, McCoy began to contact customers and potential customers of Exhibitgroup, and told them, among other things, that he was going to start his own business in direct competition with Exhibitgroup, that many of Exhibitgroup's valuable employees also would be leaving Exhibitgroup and joining McCoy's new venture, and he solicited these customers and potential customers to place future business with his new company instead of Exhibitgroup. All this was done while McCoy still was employed by Exhibitgroup and was in direct violation of McCoy's various Agreements with it.

o.  On information and belief, while he was still an employee of Exhibitgroup, and thereafter, McCoy solicited Exhibitgroup's employees, suppliers, vendors, contractors, consultants, and representatives to terminate their relationships with Exhibitgroup and to join his new enterprise. The employees whom McCoy successfully induced to leave the employment of Exhibitgroup include, but may not be limited to, Crossclaim-Defendants Arient, Barker, Buhler, Cohn, Hamill, Juett, Keown, Moeller, Ploeger and Stacy. In so doing, McCoy breached his various Agreements with Exhibitgroup and tortiously interfered with Exhibitgroup's contractual relationships with these individuals and entities.

p.  On information and belief, immediately after leaving the employment of Exhibitgroup, and even before, McCoy began to use for his own competitive benefit the Trade Secrets discussed above. Further, McCoy has taken electronic and/or "hard copy" documents from Exhibitgroup which contain such Trade Secrets, also for the purpose of unlawfully competing with Exhibitgroup and in violation of his Agreements.

30619240.1
AMENDED ANSWER, COUNTERCLAIM, CROSSCLAIMS, APPLICATION FOR TEMPORARY
RESTRAINING ORDER, AND APPLICATION FOR TEMPORARY AND PERMANENT INJUNCTIONS

PAGE 19

27. **Stanley Zalenski**

    a.    Crossclaim-Defendant Zalenski was first employed by Exhibitgroup on February 23, 1980.

    b.    On or about March 21, 1995, Zalenski signed an "Employee Guide Receipt" (Exhibit 13), pursuant to which he agreed to be bound by the Guide which provided, in pertinent part (Exhibit 14), that he: (1) was to maintain the highest standards of business ethics; (2) avoid "any activity that would . . involve a possible conflict of interest;" and (3) could never engage in the unauthorized use of Exhibitgroup property, which would include its Trade Secrets.

    c.    On or about May 16, 1997, Zalenski signed an "Employee Handbook Receipt" (Exhibit 15), in which he agreed to abide by the document referenced above in Section 26.c. with respect to the McCoy allegations.

    d.    On April 15, 1998, Zalenski signed an "Employee's Patent and Trade Secret Agreement" (Exhibit 16), the terms of which are the same as that signed by McCoy. *See* Section 26.d. above.

    e.    On July 28, 1999 (Exhibit 17), and again on April 28, 2003 (Exhibit 18), Zalenski signed receipts for Exhibitgroup's "Always Honest Manual," the pertinent terms of which are detailed in Section 26.h. above.

    f.    On December 14, 1999, Zalenski signed "Use of Company-Owned and Issued Computer Systems Agreement" (Exhibit 19), which contained the same restrictions as the one signed by McCoy. *See* Section 26.i. above.

30619240.1
AMENDED ANSWER, COUNTERCLAIM, CROSSCLAIMS, APPLICATION FOR TEMPORARY
RESTRAINING ORDER, AND APPLICATION FOR TEMPORARY AND PERMANENT INJUNCTIONS

PAGE 20

g.    On or about August 15, 2003, Zalenski's employment with Exhibitgroup terminated. At that time he held the position of Vice President of Operations.

h.    Zalenski was privy to all or most of the Trade Secrets detailed above. He also helped to develop many of said Trade Secrets while an employee of Exhibitgroup.

i.    Zalenski had substantial contact with Exhibitgroup's customers and potential customers. He directed the development of proposals for customers and prospects; conducted and attended meetings with them; and negotiated details of bids, letters of intent, contracts for Exhibitgroup's products, etc.

j.    On information and belief, beginning at least in the Summer of 2003, Zalenski began to contact customers and potential customers of Exhibitgroup, and told them, among other things, that he was going to start his own business in direct competition with Exhibitgroup, that many of Exhibitgroup's valuable employees also would be leaving Exhibitgroup and joining Zalenski's new venture, and he solicited these customers and potential customers to place future business with his new company instead of Exhibitgroup. All this was done while Zalenski still was employed by Exhibitgroup and was in direct violation of Zalenski's various Agreements with it.

k.    On information and belief, while he was still an employee of Exhibitgroup, and thereafter, Zalenski solicited Exhibitgroup's employees, suppliers, vendors, contractors, consultants and representatives to terminate their relationships with Exhibitgroup and to join his new enterprise. The employees whom Zalenski successfully induced to leave the employment of Exhibitgroup include, but may not be limited to, Counterclaim-Defendant McCoy and Crossclaim-Defendants Arient, Barker, Buhler, Cohn, Hamill, Juett, Keown, Moeller,

Ploeger and Stacy. In so doing, Zalenski breached his various Agreements with Exhibitgroup and tortiously interfered with Exhibitgroup's contractual relationships with these individuals and entities.

l. On information and belief, after leaving the employment of Exhibitgroup, and even before, Zalenski began to use for his own competitive benefit the Trade Secrets discussed above. Further, Zalenski has taken electronic and/or "hard copy" documents from Exhibitgroup which contain such Trade Secrets, also for the purpose of unlawfully competing with Exhibitgroup and in violation of his Agreements.

28. **Stak Design, Inc.**

Upon information and belief, Crossclaim-Defendant Stak is an entity formed by Zalenski and McCoy to compete directly with Exhibitgroup. It is partially through Stak, and for its benefit, that McCoy and the individual Crossclaim-Defendants herein have committed the unlawful acts detailed herein.

29. **Donald Arient**

a. Crossclaim-Defendant Arient was first employed by Exhibitgroup on or about January 6, 1986. He received a transfer and a promotion on or about February 10, 2000 and, as a condition to Arient's written offer of that date (Exhibit 20), he was required to sign Exhibitgroup's "Employee's Patent and Trade Secret Agreement" (Exhibit 21), "Employee Confidential Information and Proprietary Interest Agreement" (Exhibit 22), and the "Viad Corp. Code of Corporate Conduct" (Exhibit 23). Arient signed these three Agreements on or about February 16, 2000.

30619240.1
AMENDED ANSWER, COUNTERCLAIM, CROSSCLAIMS, APPLICATION FOR TEMPORARY
RESTRAINING ORDER, AND APPLICATION FOR TEMPORARY AND PERMANENT INJUNCTIONS

PAGE 22

b.   On July 9, 1999 (Exhibit 24), April 8, 2003 (Exhibit 25), and November 19, 2003 (Exhibit 26), Arient signed agreements to abide by Exhibitgroup's "Always Honest Manual."

c.   On December 15, 1999, Arient signed a "Use of Company-Owned and Issued Computer Systems Agreement" (Exhibit 27).

d.   On or about January 6, 2004, Arient's employment with Exhibitgroup terminated.  At that time he held the position of Project Manager.

e.   Arient was privy to all or most of the Trade Secrets detailed above.  He also helped to develop many of said Trade Secrets while an employee of Exhibitgroup.

f.   Arient had substantial contact with Exhibitgroup's customers and potential customers.

g.   On information and belief, beginning at least in the Fall of 2003, Arient began to contact customers and potential customers of Exhibitgroup, and told them, among other things, that he was going to join another business in direct competition with Exhibitgroup, that many of Exhibitgroup's valuable employees also would be leaving Exhibitgroup and joining this new venture, and he solicited these customers and potential customers to place future business with this new company (Stak) instead of Exhibitgroup.  All this was done while Arient still was employed by Exhibitgroup and was in direct violation of Arient's various Agreements with it.

h.   On information and belief, while he was still an employee of Exhibitgroup, and thereafter, Arient solicited Exhibitgroup's employees, suppliers, vendors, contractors, consultants and representatives to terminate their relationships with Exhibitgroup and to join Stak.  In so

30619240.1
AMENDED ANSWER, COUNTERCLAIM, CROSSCLAIMS, APPLICATION FOR TEMPORARY
RESTRAINING ORDER, AND APPLICATION FOR TEMPORARY AND PERMANENT INJUNCTIONS

PAGE 23

doing, Arient breached his various Agreements with Exhibitgroup and tortiously interfered with Exhibitgroup's contractual relationships with these individuals and entities.

i.     On information and belief, after leaving the employment of Exhibitgroup, and even before, Arient began to use for his own competitive benefit the Trade Secrets discussed above. Further, Arient has taken electronic and/or "hard copy" documents from Exhibitgroup which contain such Trade Secrets, also for the purpose of unlawfully competing with Exhibitgroup and in violation of his Agreements.

30.     **Donald Barker**

a.     Crossclaim-Defendant Barker was first employed by Exhibitgroup on or about March 31, 1998. As a condition to his written offer of employment (Exhibit 28), on or about April 2, 1998, Barker signed Exhibitgroup's "Employee Confidential Information and Proprietary Interest Agreement" (Exhibit 29), its "Employee's Patent and Trade Secret Agreement" (Exhibit 30), as well as the "Viad Corp. Code of Corporate Conduct" (Exhibit 31).

b.     Prior to being employed by Exhibitgroup, Barker was an employee of Horton.

c.     On April 27, 1999, April 11, 2003, and again on November 11, 2003, Barker signed for and agreed to be bound by Exhibitgroup's "Always Honest Manual" (Exhibits 32 – 35).

d.     On or about December 13, 2003, Barker signed Exhibitgroup's "Use of Company-Owned and Issued Computer Systems Agreement" (Exhibit 36).

e.     On or about December 29, 2003, Barker 's employment with Exhibitgroup terminated. At that time he held the position of Purchasing Manager.

30619240.1
AMENDED ANSWER, COUNTERCLAIM, CROSSCLAIMS, APPLICATION FOR TEMPORARY
RESTRAINING ORDER, AND APPLICATION FOR TEMPORARY AND PERMANENT INJUNCTIONS

PAGE 24

f.  Barker was privy to all or most of the Trade Secrets detailed above. He also helped to develop many of said Trade Secrets while an employee of Horton and/or Exhibitgroup.

g.  Barker had substantial contact with Exhibitgroup's customers and potential customers.

h.  On information and belief, beginning at least in the Fall of 2003, Barker began to contact customers and potential customers of Exhibitgroup, and told them, among other things, that he was going to join another business in direct competition with Exhibitgroup, that many of Exhibitgroup's valuable employees also would be leaving Exhibitgroup and joining this new venture, and he solicited these customers and potential customers to place future business with this new company (Stak) instead of Exhibitgroup. All this was done while Barker still was employed by Exhibitgroup and was in direct violation of Barker's various Agreements with it.

i.  On information and belief, while he was still an employee of Exhibitgroup, and thereafter, Barker solicited Exhibitgroup's employees, suppliers, vendors, contractors, consultants and representatives to terminate their relationships with Exhibitgroup and to join Stak. In so doing, Barker breached his various Agreements with Exhibitgroup and tortiously interfered with Exhibitgroup's contractual relationships with these individuals and entities.

j.  On information and belief, immediately after leaving the employment of Exhibitgroup, and even before, Barker began to use for his own competitive benefit the Trade Secrets discussed above. Further, Barker has taken electronic and/or "hard copy" documents from Exhibitgroup which contain such Trade Secrets, also for the purpose of unlawfully competing with Exhibitgroup and in violation of his Agreements.

30619240.1
AMENDED ANSWER, COUNTERCLAIM, CROSSCLAIMS, APPLICATION FOR TEMPORARY
RESTRAINING ORDER, AND APPLICATION FOR TEMPORARY AND PERMANENT INJUNCTIONS

PAGE 25

31. **John Buhler**

    a.    Crossclaim-Defendant Buhler was first employed by Exhibitgroup on or about April 1, 1998. As a condition to his written offer of employment (Exhibit 37), on April 18, 1998 Buhler signed Exhibitgroup's "Employee Confidential Information and Proprietary Interest Agreement" (Exhibit 38); its "Employee's Patent and Trade Secret Agreement" (Exhibit 39); as well as the "Viad Corp. Code of Corporate Conduct" (Exhibit 40).

    b.    Prior to being employed by Exhibitgroup, Buhler was an employee of Horton.

    c.    On April 13, 1999, Buhler signed an "Employee Handbook Receipt" (Exhibit 41), and on July 26, 1999, he signed for and agreed to follow Exhibitgroup's "Always Honest Manual" (Exhibit 42).

    d.    On December 13, 1999, Buhler signed Exhibitgroup's "Use of Company-Owned and Issued Computer Systems Agreement" (Exhibit 43).

    e.    On or about December 1, 2003, Buhler's employment with Exhibitgroup terminated. At that time he held the position of Special Account Projects Manager.

    f.    Buhler was privy to all or most of the Trade Secrets detailed above. He also helped to develop many of said Trade Secrets while an employee of Horton and/or Exhibitgroup.

    g.    Buhler had substantial contact with Exhibitgroup's customers and potential customers.

    h.    On information and belief, beginning at least in the Fall of 2003, Buhler began to contact customers and potential customers of Exhibitgroup, and told them, among other things, that he was going to join another business in direct competition with Exhibitgroup, that

30619240.1
AMENDED ANSWER, COUNTERCLAIM, CROSSCLAIMS, APPLICATION FOR TEMPORARY
RESTRAINING ORDER, AND APPLICATION FOR TEMPORARY AND PERMANENT INJUNCTIONS

PAGE 26

many of Exhibitgroup's valuable employees also would be leaving Exhibitgroup and joining this new venture, and he solicited these customers and potential customers to place future business with this new company (Stak) instead of Exhibitgroup. All this was done while Buhler still was employed by Exhibitgroup and was in direct violation of Buhler's various Agreements with it.

i.    On information and belief, while he was still an employee of Exhibitgroup, and thereafter, Buhler solicited Exhibitgroup's employees, suppliers, vendors, contractors, consultants and representatives to terminate their relationships with Exhibitgroup and to join Stak. In so doing, Buhler breached his various Agreements with Exhibitgroup and tortiously interfered with Exhibitgroup's contractual relationships with these individuals and entities.

j.    On information and belief, after leaving the employment of Exhibitgroup, and even before, Buhler began to use for his own competitive benefit the Trade Secrets discussed above. Further, Buhler has taken electronic and/or "hard copy" documents from Exhibitgroup which contain such Trade Secrets, also for the purpose of unlawfully competing with Exhibitgroup and in violation of his Agreements.

32.    **Garry Cohn**

a.    Crossclaim-Defendant Cohn was first employed by Exhibitgroup on or about January 21, 1999. As a condition to his written offer of employment (Exhibit 44), on that same day Cohn signed Exhibitgroup's "Employee Confidential Information and Proprietary Interest Agreement" (Exhibit 45); its "Employee's Patent and Trade Secret Agreement" (Exhibit 46); as well as the "Viad Corp. Code of Corporate Conduct" (Exhibit 47).

30619240.1
AMENDED ANSWER, COUNTERCLAIM, CROSSCLAIMS, APPLICATION FOR TEMPORARY
RESTRAINING ORDER, AND APPLICATION FOR TEMPORARY AND PERMANENT INJUNCTIONS

PAGE 27

b.   On or about July 9, 1999, April 25, 2003, and November 21, 2003, Cohn signed for, and agreed to follow Exhibitgroup's "Always Honest Manual" (Exhibits 48 – 50).

c.   On or about December 15, 1999, Cohn signed Exhibitgroup's "Use of Company-Owned and Issued Computer Systems Agreement" (Exhibit 51).

d.   On or about December 8, 2003, Cohn's employment with Exhibitgroup terminated. At that time he held the position of Creative Director.

e.   Cohn was privy to all or most of the Trade Secrets detailed above. He also helped to develop many of said Trade Secrets while an employee of Exhibitgroup.

f.   Cohn had substantial contact with Exhibitgroup's customers and potential customers.

g.   On information and belief, beginning at least in the Fall of 2003, Cohn began to contact customers and potential customers of Exhibitgroup, and told them, among other things, that he was going to join another business in direct competition with Exhibitgroup, that many of Exhibitgroup's valuable employees also would be leaving Exhibitgroup and joining this new venture, and he solicited these customers and potential customers to place future business with this new company (Stak) instead of Exhibitgroup. All this was done while Cohn still was employed by Exhibitgroup and was in direct violation of Cohn's various Agreements with it.

h.   On information and belief, while he was still an employee of Exhibitgroup, and thereafter, Cohn solicited Exhibitgroup's employees, suppliers, vendors, contractors, consultants and representatives to terminate their relationships with Exhibitgroup and to join Stak. In so

30619240.1
AMENDED ANSWER, COUNTERCLAIM, CROSSCLAIMS, APPLICATION FOR TEMPORARY
RESTRAINING ORDER, AND APPLICATION FOR TEMPORARY AND PERMANENT INJUNCTIONS

PAGE 28

doing, Cohn breached his various Agreements with Exhibitgroup and tortiously interfered with Exhibitgroup's contractual relationships with these individuals and entities.

i.  On information and belief, after leaving the employment of Exhibitgroup, and even before, Cohn began to use for his own competitive benefit the Trade Secrets discussed above. Further, Cohn has taken electronic and/or "hard copy" documents from Exhibitgroup which contain such Trade Secrets, also for the purpose of unlawfully competing with Exhibitgroup and in violation of his Agreements.

33.  **Michelle Hamill**

a.  Crossclaim-Defendant Hamill was first employed by Exhibitgroup on or about April 14, 2003. As a condition to her written offer of employment (Exhibit 52), on that same day, Hamill signed Exhibitgroup's "Employee Confidential Information and Proprietary Interest Agreement" (Exhibit 53), and its "Employee's Patent and Trade Secret Agreement" (Exhibit 54). On April 28, 2003, Hamill signed the "Viad Corp. Code of Corporate Conduct" (Exhibit 55).

b.  On April 28, 2003, and again on November 21, 2003, Hamill signed for and agreed to be bound by Exhibitgroup's "Always Honest Manual" (Exhibits 56 – 58).

c.  On April 28, 2003, Hamill signed Exhibitgroup's "Use of Company-Owned and Issued Computer Systems Agreement" (Exhibit 59).

d.  On or about December 22, 2003, Hamill's employment with Exhibitgroup terminated. At that time she held the position of Accounts Manager.

30619240.1
AMENDED ANSWER, COUNTERCLAIM, CROSSCLAIMS, APPLICATION FOR TEMPORARY
RESTRAINING ORDER, AND APPLICATION FOR TEMPORARY AND PERMANENT INJUNCTIONS

PAGE 29

e.  Hamill was privy to all or most of the Trade Secrets detailed above. She also helped to develop many of said Trade Secrets while an employee of Exhibitgroup.

f.  Hamill had substantial contact with Exhibitgroup's customers and potential customers.

g.  On information and belief, beginning at least in the Fall of 2003, Hamill began to contact customers and potential customers of Exhibitgroup, and told them, among other things, that she was going to join another business in direct competition with Exhibitgroup, that many of Exhibitgroup's valuable employees also would be leaving Exhibitgroup and joining this new venture, and she solicited these customers and potential customers to place future business with this new company (Stak) instead of Exhibitgroup. All this was done while Hamill still was employed by Exhibitgroup and was in direct violation of Hamill's various Agreements with it.

h.  On information and belief, while she was still an employee of Exhibitgroup, and thereafter, Hamill solicited Exhibitgroup's employees, suppliers, vendors, contractors, consultants and representatives to terminate their relationships with Exhibitgroup and to join Stak. In so doing, Hamill breached her various Agreements with Exhibitgroup and tortiously interfered with Exhibitgroup's contractual relationships with these individuals and entities.

i.  On information and belief, immediately after leaving the employment of Exhibitgroup, and even before, Hamill began to use for her own competitive benefit the Trade Secrets discussed above. Further, Hamill has taken electronic and/or "hard copy" documents from Exhibitgroup which contain such Trade Secrets, also for the purpose of unlawfully competing with Exhibitgroup and in violation of her Agreements.

30619240.1
AMENDED ANSWER, COUNTERCLAIM, CROSSCLAIMS, APPLICATION FOR TEMPORARY
RESTRAINING ORDER, AND APPLICATION FOR TEMPORARY AND PERMANENT INJUNCTIONS

PAGE 30

34. **Shannon Juett**

    a.    Crossclaim-Defendant Juett was first employed by Exhibitgroup on or about March 31, 1998. As a condition to her written offer of employment (Exhibit 60), on or about April 14, 1998, Juett signed Exhibitgroup's "Employee Confidential Information and Proprietary Interest Agreement" (Exhibit 61); its "Employee's Patent and Trade Secret Agreement" (Exhibit 62); as well as the "Viad Corp. Code of Corporate Conduct" (Exhibit 63). Also on that same date Juett agreed to abide by Exhibitgroup's Employee Handbook (Exhibit 64).

    b.    Prior to being employed by Exhibitgroup, Juett was an employee of Horton.

    c.    On July 9, 1999, Juett agreed to comply with Exhibitgroup's "Always Honest Manual" (Exhibit 65), and on December 15 of that year she signed Exhibitgroup's "Use of Company-Owned and Issued Computer Systems Agreement" (Exhibit 66).

    d.    On August 6, 2002, Juett signed an "Employee Confidential Information, Non-Compete and Proprietary Interest Agreement" (Exhibit 67), the terms of which are essentially the same as the one signed by McCoy.

    e.    On or about December 2, 2003, Juett resigned her employment with Exhibitgroup. At that time she held the position of Account Executive.

    f.    Juett was privy to all or most of the Trade Secrets detailed above. She also helped to develop many of said Trade Secrets while an employee of Horton and/or Exhibitgroup.

    g.    Juett had substantial contact with Exhibitgroup's customers and potential customers.

h.      On information and belief, beginning at least in the Fall of 2003, Juett began to contact customers and potential customers of Exhibitgroup, and told them, among other things, that she was going to join another business in direct competition with Exhibitgroup, that many of Exhibitgroup's valuable employees also would be leaving Exhibitgroup and joining this new venture, and she solicited these customers and potential customers to place future business with this new company (Stak) instead of Exhibitgroup. All this was done while Juett still was employed by Exhibitgroup and was in direct violation of Juett's various Agreements with it.

i.      On information and belief, while she was still an employee of Exhibitgroup, and thereafter, Juett solicited Exhibitgroup's employees, suppliers, vendors, contractors, consultants and representatives to terminate their relationships with Exhibitgroup and to join Stak. In so doing, Juett breached her various Agreements with Exhibitgroup and tortiously interfered with Exhibitgroup's contractual relationships with these individuals and entities.

j.      On information and belief, immediately after leaving the employment of Exhibitgroup, and even before, Juett began to use for her own competitive benefit the Trade Secrets discussed above. Further, Juett has taken electronic and/or "hard copy" documents from Exhibitgroup which contain such Trade Secrets, also for the purpose of unlawfully competing with Exhibitgroup and in violation of her Agreements.

35.   **Loren Wayne Keown**

a.      Crossclaim-Defendant Keown was first employed by Exhibitgroup on or about March 31, 1998. As a condition to his written offer of employment (Exhibit 68), on or about May 2, 1998, Keown signed Exhibitgroup's "Employee Confidential Information and Proprietary

30619240.1
AMENDED ANSWER, COUNTERCLAIM, CROSSCLAIMS, APPLICATION FOR TEMPORARY
RESTRAINING ORDER, AND APPLICATION FOR TEMPORARY AND PERMANENT INJUNCTIONS

PAGE 32

Interest Agreement" (Exhibit 69); as well as its "Employee's Patent and Trade Secret Agreement" (Exhibit 70).

b.      Prior to being employed by Exhibitgroup, Keown was an employee of Horton.

c.      On July 12, 1999, and again on April 25, 2003, Keown agreed to be bound by Exhibitgroup's "Always Honest Manual" (Exhibit 71 - 72).

d.      On or about December 14, 1999, Keown signed Exhibitgroup's "Use of Company-Owned and Issued Computer Systems Agreement" (Exhibit 73.

e.      On or about November 17, 2003, Keown resigned his employment with Exhibitgroup. At that time he held the position of Director of Manufacturing.

f.      Keown was privy to all or most of the Trade Secrets detailed above.  He also helped to develop many of said Trade Secrets while an employee of Horton and/or Exhibitgroup.

g.      Keown had substantial contact with Exhibitgroup's customers and potential customers.

h.      On information and belief, beginning at least in the Fall of 2003, Keown began to contact customers and potential customers of Exhibitgroup, and told them, among other things, that he was going to join another business in direct competition with Exhibitgroup, that many of Exhibitgroup's valuable employees also would be leaving Exhibitgroup and joining this new venture, and he solicited these customers and potential customers to place future business with this new company (Stak) instead of Exhibitgroup.  All this was done while Keown still was employed by Exhibitgroup and was in direct violation of Keown's various Agreements with it.

30619240.1
AMENDED ANSWER, COUNTERCLAIM, CROSSCLAIMS, APPLICATION FOR TEMPORARY
RESTRAINING ORDER, AND APPLICATION FOR TEMPORARY AND PERMANENT INJUNCTIONS

PAGE 33

i.  On information and belief, while he was still an employee of Exhibitgroup, and thereafter, Keown solicited Exhibitgroup's employees, suppliers, vendors, contractors, consultants and representatives to terminate their relationships with Exhibitgroup and to join Stak. In so doing, Keown breached his various Agreements with Exhibitgroup and tortiously interfered with Exhibitgroup's contractual relationships with these individuals and entities.

j.  On information and belief, immediately after leaving the employment of Exhibitgroup, and even before, Keown began to use for his own competitive benefit the Trade Secrets discussed above. Further, Keown has taken electronic and/or "hard copy" documents from Exhibitgroup which contain such Trade Secrets, also for the purpose of unlawfully competing with Exhibitgroup and in violation of his Agreements.

36. **Joachim Moeller**

a.  Crossclaim-Defendant Moeller was re-employed by Exhibitgroup on or about September 6, 2000 (Exhibit 74). During a previous period of employment, on or about October 19, 1999, Moeller signed Exhibitgroup's "Employee Confidential Information and Proprietary Interest Agreement" (Exhibit 75); its "Employee's Patent and Trade Secret Agreement" (Exhibit 76); as well as the "Viad Corp. Code of Corporate Conduct" (Exhibit 77).

b.  On or about December 16, 1999, Moeller signed Exhibitgroup's "Use of Company-Owned and Issued Computer Systems Agreement" (Exhibit 78).

c.  On April 8, 2003, and again on November 21, 2003, Moeller agreed to abide by Exhibitgroup's "Always Honest Manual" (Exhibits 79 - 80).

30619240.1
AMENDED ANSWER, COUNTERCLAIM, CROSSCLAIMS, APPLICATION FOR TEMPORARY
RESTRAINING ORDER, AND APPLICATION FOR TEMPORARY AND PERMANENT INJUNCTIONS

PAGE 34

d.     On or about December 9, 2003, Moeller resigned his employment with Exhibitgroup. At that time he held the position of Retail Detailer.

e.     Moeller was privy to all or most of the Trade Secrets detailed above. He also helped to develop many of said Trade Secrets while an employee of Exhibitgroup.

f.     Moeller had substantial contact with Exhibitgroup's customers and potential customers.

g.     On information and belief, beginning at least in the Fall of 2003, Moeller began to contact customers and potential customers of Exhibitgroup, and told them, among other things, that he was going to join another business in direct competition with Exhibitgroup, that many of Exhibitgroup's valuable employees also would be leaving Exhibitgroup and joining this new venture, and he solicited these customers and potential customers to place future business with this new company (Stak) instead of Exhibitgroup. All this was done while Moeller still was employed by Exhibitgroup and was in direct violation of Moeller's various Agreements with it.

h.     On information and belief, while he was still an employee of Exhibitgroup, and thereafter, Moeller solicited Exhibitgroup's employees, suppliers, vendors, contractors, consultants and representatives to terminate their relationships with Exhibitgroup and to join Stak. In so doing, Moeller breached his various Agreements with Exhibitgroup and tortiously interfered with Exhibitgroup's contractual relationships with these individuals and entities.

i.     On information and belief, immediately after leaving the employment of Exhibitgroup, and even before, Moeller began to use for his own competitive benefit the Trade Secrets discussed above. Further, Moeller has taken electronic and/or "hard copy" documents

30619240.1
AMENDED ANSWER, COUNTERCLAIM, CROSSCLAIMS, APPLICATION FOR TEMPORARY
RESTRAINING ORDER, AND APPLICATION FOR TEMPORARY AND PERMANENT INJUNCTIONS

PAGE 35

from Exhibitgroup which contain such Trade Secrets, also for the purpose of unlawfully competing with Exhibitgroup and in violation of his Agreements.

37.  **Andrew C. Ploeger**

a.  Crossclaim-Defendant Ploeger was first employed by Exhibitgroup on or about August 26, 1997. As a condition to his written offer of employment (Exhibit 81), on that same date Ploeger signed Exhibitgroup's "Employee Confidential Information and Proprietary Interest Agreement" (Exhibit 82); its "Employee's Patent and Trade Secret Agreement" (Exhibit 83); as well as the "Viad Corp. Code of Corporate Conduct" (Exhibit 84).

b.  On April 27, 1998, Ploeger signed another "Employee's Patent and Trade Secret Agreement" (Exhibit 85).

c.  On July 27, 1999, and again on April 17, 2003, Ploeger agreed to be bound by Exhibitgroup's "Always Honest Manual" (Exhibits 86 - 87).

d.  On or about December 12, 2003, Ploeger resigned his employment with Exhibitgroup. At that time he held the position of Senior Estimator.

e.  Ploeger was privy to all or most of the Trade Secrets detailed above. He also helped to develop many of said Trade Secrets while an employee of Exhibitgroup.

f.  Ploeger had substantial contact with Exhibitgroup's customers and potential customers.

g.  On information and belief, beginning at least in the Fall of 2003, Ploeger began to contact customers and potential customers of Exhibitgroup, and told them, among other things, that he was going to join another business in direct competition with Exhibitgroup, that

30619240.1
AMENDED ANSWER, COUNTERCLAIM, CROSSCLAIMS, APPLICATION FOR TEMPORARY
RESTRAINING ORDER, AND APPLICATION FOR TEMPORARY AND PERMANENT INJUNCTIONS

PAGE 36

many of Exhibitgroup's valuable employees also would be leaving Exhibitgroup and joining this new venture, and he solicited these customers and potential customers to place future business with this new company (Stak) instead of Exhibitgroup. All this was done while Ploeger still was employed by Exhibitgroup and was in direct violation of Ploeger's various Agreements with it.

h. On information and belief, while he was still an employee of Exhibitgroup, and thereafter, Ploeger solicited Exhibitgroup's employees, suppliers, vendors, contractors, consultants and representatives to terminate their relationships with Exhibitgroup and to join Stak. In so doing, Ploeger breached his various Agreements with Exhibitgroup and tortiously interfered with Exhibitgroup's contractual relationships with these individuals and entities.

i. On information and belief, immediately after leaving the employment of Exhibitgroup, and even before, Ploeger began to use for his own competitive benefit the Trade Secrets discussed above. Further, Ploeger has taken electronic and/or "hard copy" documents from Exhibitgroup which contain such Trade Secrets, also for the purpose of unlawfully competing with Exhibitgroup and in violation of his Agreements.

38. **Marjorie Stacy**

a. Crossclaim-Defendant Stacy was first employed by Exhibitgroup on or about February 22, 2002. As a condition to her written offer of employment (Exhibit 88), but prior to it, on February 20, 2002, Stacy signed Exhibitgroup's "Employee Confidential Information and Proprietary Interest Agreement" (Exhibit 89), its "Employee's Patent and Trade Secret Agreement" (Exhibit 90), the "Viad Corp Code of Corporate Conduct" (Exhibit 91); as

30619240.1
AMENDED ANSWER, COUNTERCLAIM, CROSSCLAIMS, APPLICATION FOR TEMPORARY
RESTRAINING ORDER, AND APPLICATION FOR TEMPORARY AND PERMANENT INJUNCTIONS

PAGE 37

well as Exhibitgroup's "Use of Company-Owned and Issued Computer System Agreement" (Exhibit 92).

b.    On March 4, 2002, April 7, 2003, and November 20, 2003, Stacy signed for and agreed to follow Exhibitgroup's "Always Honest Manual" (Exhibits 93 - 96).

c.    On or about December 22, 2003, Stacy's employment with Exhibitgroup terminated. At that time she held the position of Accounts Manager.

d.    Stacy was privy to all or most of the Trade Secrets detailed above. She also helped to develop many of said Trade Secrets while an employee of Exhibitgroup.

e.    Stacy had substantial contact with Exhibitgroup's customers and potential customers.

f.    On information and belief, beginning at least in the Fall of 2003, Stacy began to contact customers and potential customers of Exhibitgroup, and told them, among other things, that she was going to join another business in direct competition with Exhibitgroup, that many of Exhibitgroup's valuable employees also would be leaving Exhibitgroup and joining this new venture, and she solicited these customers and potential customers to place future business with this new company (Stak) instead of Exhibitgroup. All this was done while Stacy still was employed by Exhibitgroup and was in direct violation of Stacy's various Agreements with it.

g.    On information and belief, while she was still an employee of Exhibitgroup, and thereafter, Stacy solicited Exhibitgroup's employees, suppliers, vendors, contractors, consultants and representatives to terminate their relationships with Exhibitgroup and to join Stak. In so

30619240.1

AMENDED ANSWER, COUNTERCLAIM, CROSSCLAIMS, APPLICATION FOR TEMPORARY
RESTRAINING ORDER, AND APPLICATION FOR TEMPORARY AND PERMANENT INJUNCTIONS

PAGE 38

doing, Stacy breached her various Agreements with Exhibitgroup and tortiously interfered with Exhibitgroup's contractual relationships with these individuals and entities.

h.    On information and belief, immediately after leaving the employment of Exhibitgroup, and even before, Stacy began to use for her own competitive benefit the Trade Secrets discussed above. Further, Stacy has taken electronic and/or "hard copy" documents from Exhibitgroup which contain such Trade Secrets, also for the purpose of unlawfully competing with Exhibitgroup and in violation of her Agreements.

### V.

### CAUSES OF ACTION

39.   **Misappropriation of Trade Secrets and Confidential Information Under the Inevitable or Probable Disclosure Doctrine**

a.    Exhibitgroup and Viad incorporate the allegations contained in Sections 1 – 38 above.

b.    Due to the nature of Exhibitgroup's and Viad's Trade Secrets discussed above, which McCoy, Zalenski, Arient, Barker, Buhler, Cohn, Hamill, Juett, Keown, Moeller, Ploeger, and Stacy not only knew of and had access to, but were instrumental in developing, McCoy and the Crossclaim-Defendants individually, and all of them collectively, will probably or inevitably disclose such information and secrets to others, and also will use them to compete with Exhibitgroup.

c.    McCoy and all Crossclaim-Defendants acquired or developed these Trade Secrets through confidential relationships with Exhibitgroup. Also, McCoy and the Crossclaim-Defendants individually, and all of them collectively, misappropriated this information and

30619240.1
AMENDED ANSWER, COUNTERCLAIM, CROSSCLAIMS, APPLICATION FOR TEMPORARY
RESTRAINING ORDER, AND APPLICATION FOR TEMPORARY AND PERMANENT INJUNCTIONS

PAGE 39

Trade Secrets without authorization from Exhibitgroup.   In fact, McCoy and all Crossclaim-Defendants pledged not to misappropriate them.

d.      Exhibitgroup took reasonable and necessary steps to ensure the confidentiality and security of its Trade Secrets.  They are not generally known in the industry.

e.      These Trade Secrets give Exhibitgroup a competitive advantage over those who do not know or use them.

f.      Accordingly, Exhibitgroup and Viad seek temporary and permanent injunctions as set forth below.

g.      In addition, and in the alternative, Exhibitgroup and Viad have been damaged by McCoy's and the Crossclaim-Defendants' conduct in an amount within the jurisdictional limits of this Court, for which Exhibitgroup and Viad now sue.

40.   **Actual Confidential/Proprietary Information and Trade Secrets Misappropriation**

a.      Exhibitgroup and Viad incorporate the allegations contained in Sections 1 – 39 above.

b.      As stated above, McCoy, Zalenski, Arient, Barker, Buhler, Cohn, Hamill, Juett, Keown, Moeller, Ploeger, and Stacy individually, and all of them collectively, not only knew of and had access to, but were instrumental in developing the above-described Trade Secrets.

c.      McCoy and the Crossclaim-Defendants individually, and all of them collectively, have misappropriated such information and Trade Secrets for their own individual and collective benefit.

30619240.1
AMENDED ANSWER, COUNTERCLAIM, CROSSCLAIMS, APPLICATION FOR TEMPORARY
RESTRAINING ORDER, AND APPLICATION FOR TEMPORARY AND PERMANENT INJUNCTIONS

PAGE 40

d.      McCoy and the Crossclaim-Defendants acquired or developed these Trade Secrets through a confidential relationship with Exhibitgroup. Also, McCoy and the Crossclaim-Defendants misappropriated this information and Trade Secrets without authorization from Exhibitgroup. In fact, McCoy and the Crossclaim-Defendants pledged not to misappropriate them.

e.      Exhibitgroup took reasonable and necessary steps to ensure the confidentiality and security of its Trade Secrets. They are not generally known in the industry.

f.      These Trade Secrets give Exhibitgroup a competitive advantage over those who do not know or use them.

g.      Accordingly, Exhibitgroup and Viad seek temporary and permanent injunctions as set forth below.

h.      In addition, and in the alternative, Exhibitgroup and Viad have been damaged by McCoy's and Crossclaim-Defendants' conduct in an amount within the jurisdictional limits of this Court, for which Exhibitgroup and Viad now sue.

41.      **Tortuous Interference with Contract**

a.      Exhibitgroup and Viad incorporate the allegations contained in Sections 1 – 40 above.

b.      Exhibitgroup had valid employment at will agreements with McCoy and the Crossclaim-Defendants. McCoy and Zalenski tortiously interfered with Exhibitgroup's agreements with Arient, Barker, Cohn, Hamill, Juett, Keown, Ploeger, Stacy, and others. Zalenski tortiously interfered with Exhibitgroup's agreement with McCoy. Further, these Crossclaim-Defendants have conspired with McCoy and Zalenski to tortiously interfere

30619240.1
AMENDED ANSWER, COUNTERCLAIM, CROSSCLAIMS, APPLICATION FOR TEMPORARY
RESTRAINING ORDER, AND APPLICATION FOR TEMPORARY AND PERMANENT INJUNCTIONS

PAGE 41

with Exhibitgroup's agreements with other employees, and, in fact, they have tortiously interfered with said agreements. Further, McCoy and Crossclaim-Defendants, individually, and all of them collectively, have tortiously interfered with Exhibitgroup's contracts with customers and potential customers, including, without limitation, Weyerhaeuser Corporation, Build-A-Bear, Inc., Columbiana Center, The Mills Corporation, Urban Retail Properties, and Westfield Corporation. They did this while they were employees of Exhibitgroup, and after.

c. The above-described actions were willful, wanton, and intentional. They were the proximate cause of damages to Exhibitgroup and Viad.

d. McCoy and the Crossclaim-Defendants had no legal right, or good faith claim to a colorable legal right, to take the actions described above.

e. Accordingly, Exhibitgroup and Viad seek a temporary restraining order, and temporary and permanent injunctive relief as set forth below.

f. In addition, or in the alternative, Exhibitgroup and Viad have been damaged by McCoy's and Crossclaim-Defendants' conduct in an amount within the jurisdictional limits of this Court, for which Exhibitgroup and Viad now sue.

42. **Wrongful Interference with Prospective Contract/Business Relations**

a. Exhibitgroup and Viad incorporate the allegations contained in Sections 1 – 41 above.

b. There was a reasonable probability that Exhibitgroup would have entered into additional contractual relations with, by way of example, Weyerhaeuser Corporation, Build-A-Bear,

30619240.1
AMENDED ANSWER, COUNTERCLAIM, CROSSCLAIMS, APPLICATION FOR TEMPORARY
RESTRAINING ORDER, AND APPLICATION FOR TEMPORARY AND PERMANENT INJUNCTIONS

PAGE 42

Inc., Columbiana Center, The Mills Corporation, Urban Retail Properties, and Westfield Corporation.

c.   McCoy and the Crossclaim-Defendants, individually, and all of them collectively, tortiously interfered with these prospective contracts/business relationships.   Said interference was willful, wanton, and intentional.  They did this while they were employed by Exhibitgroup, and after.   These acts were done with the purpose of harming Exhibitgroup and Viad and enriching McCoy and the Crossclaim-Defendants.

d.   McCoy and the Crossclaim-Defendants had no legal right, or good faith claim to a colorable legal right, to take the actions described above.  Exhibitgroup and Viad has suffered damage as a result of these actions.

e.   Accordingly, Exhibitgroup and Viad seek temporary and permanent injunctions as set forth below.

f.   In addition, or in the alternative, Exhibitgroup and Viad have been damaged by McCoy's and the Crossclaim-Defendants' conduct in an amount within the jurisdictional limits of this Court, for which Exhibitgroup and Viad now sue.

43.   **Theft/Conversion of Corporate Opportunity**

a.   Exhibitgroup and Viad incorporate the allegations contained in Sections 1 – 42.

b.   McCoy and Zalenski both were officers of Exhibitgroup.  By their actions described above, they, both individually and collectively, have misappropriated or stolen corporate opportunities from Exhibitgroup.  This includes, without limitation, opportunities related to Weyerhaeuser Corporation, Build-A-Bear, Inc., Columbiana Center, The Mills

30619240.1
AMENDED ANSWER, COUNTERCLAIM, CROSSCLAIMS, APPLICATION FOR TEMPORARY
RESTRAINING ORDER, AND APPLICATION FOR TEMPORARY AND PERMANENT INJUNCTIONS

PAGE 43

Corporation, Urban Retail Properties, and Westfield Corporation. As officers, McCoy and Zalenski owed the highest allegiance and fiduciary duties to Exhibitgroup. By their actions described above, McCoy and Zalenski have willfully, wantonly, and intentionally breached their duties and have stolen and converted Exhibitgroup's corporate opportunities.

c.  Neither McCoy nor Zalenski had a legal right, or a good faith claim to a colorable legal right, to take the actions described above. Exhibitgroup and Viad have suffered damages as a result of these illegal actions.

d.  Accordingly, Exhibitgroup and Viad seek temporary and permanent injunctions as set forth below.

e.  In addition, or in the alternative, Exhibitgroup and Viad have been damaged by McCoy's and Zalenski' conduct in an amount within the jurisdictional limits of this Court, for which Exhibitgroup and Viad now sue.

44.  **Unfair Competition – Count I**

a.  Exhibitgroup and Viad incorporate the allegations contained in Sections 1 – 43 above.

b.  The actions of McCoy and the Crossclaim-Defendants described above were designed solely to compete unfairly with Exhibitgroup, and in fact to attempt to destroy it. McCoy and the Crossclaim-Defendants have violated all rules of fair play; have acted contrary to good conscience; shocked reasonable business sensibilities; and have acted in immoral, unethical, oppressive, and unscrupulous manners.

c.  Said conduct by McCoy and the Crossclaim-Defendants, individually and collectively, were willful, wanton, and intentional. They did this while employed by Exhibitgroup and

30619240.1
AMENDED ANSWER, COUNTERCLAIM, CROSSCLAIMS, APPLICATION FOR TEMPORARY
RESTRAINING ORDER, AND APPLICATION FOR TEMPORARY AND PERMANENT INJUNCTIONS

PAGE 44

after. These acts were done with the purpose of harming Exhibitgroup and enriching McCoy and the Crossclaim-Defendants.

d.  McCoy and the Crossclaim-Defendants had no legal right, or good faith claim to a colorable legal right, to take the actions described above. Exhibitgroup and Viad have suffered damage as a result of these actions.

e.  Accordingly, Exhibitgroup and Viad seek temporary and permanent injunctions as set forth below.

f.  In addition, or in the alternative, Exhibitgroup and Viad have been damaged by McCoy's and the Crossclaim-Defendants' conduct in an amount within the jurisdictional limits of this Court, for which Exhibitgroup and Viad now sue.

45.  **Unfair Competition – Count II**

a.  Exhibitgroup and Viad incorporate the allegations contained in Sections 1 – 44 above.

b.  The actions of McCoy and Zalenski in inducing and encouraging Exhibitgroup's employees, including without limitation, Arient, Barker, Buhler, Cohn, Hamill, Juett, Keown, Moeller, Ploeger, and Stacy (and of Zalenski with respect to McCoy), constitutes unlawful corporate raiding, and unfair competition.

c.  McCoy and Zalenski, and through them Stak, have engaged in a pattern of conduct of systematically soliciting Exhibitgroup's valuable employees to leave Exhibitgroup's employment and to join Stak.

30619240.1
AMENDED ANSWER, COUNTERCLAIM, CROSSCLAIMS, APPLICATION FOR TEMPORARY
RESTRAINING ORDER, AND APPLICATION FOR TEMPORARY AND PERMANENT INJUNCTIONS

PAGE 45

d.  McCoy and Zalenski have unlawfully used their knowledge of Exhibitgroup's workforce, and have identified Exhibitgroup employees who would be particularly useful in competition against Exhibitgroup. These have included employees with special skills and knowledge of Exhibitgroup's customers and Trade Secrets. What McCoy and Zalenski have done is to "cherry pick" from Exhibitgroup's compliment of employees. In so doing they have deprived Exhibitgroup of the enjoyment of the considerable time, effort, and expense incurred by Exhibitgroup in hiring and training these individuals, all at no expense to or effort of McCoy, Zalenski, or Stak.

e.  The actions of McCoy, Zalenski, and Stak described above were designed solely to compete unfairly with Exhibitgroup and in fact to attempt to destroy it.

f.  Said conduct by McCoy, Zalenski, and Stak, individually and collectively, were willful, wanton, and intentional. McCoy and Zalenski did this while employed by Exhibitgroup and after. These actions were done with the purpose of harming Exhibitgroup and Viad and enriching McCoy, Zalenski, and Stak.

g.  McCoy, Zalenski, and Stak had no legal right, or good faith claim to a colorable legal right, to take the actions described above. Exhibitgroup and Viad have suffered damage as a result of these actions.

h.  Accordingly, Exhibitgroup and Viad seek a temporary restraining order, and temporary and permanent injunctions as set forth below.

i.  In addition, or in the alternative, Exhibitgroup and Viad have been damaged by McCoy's, Zalenski's and Stak's conduct in an amount within the jurisdictional limits of this Court, for which Exhibitgroup and Viad now sue.

30619240.1
AMENDED ANSWER, COUNTERCLAIM, CROSSCLAIMS, APPLICATION FOR TEMPORARY
RESTRAINING ORDER, AND APPLICATION FOR TEMPORARY AND PERMANENT INJUNCTIONS

PAGE 46

46.    **Breach of Duty of Loyalty as well as Fiduciary Duty**

a.    Exhibitgroup and Viad incorporate the allegations contained in Sections 1 – 45 above.

b.    McCoy, Zalenski, Arient, Barker, Buhler, Cohn, Hamill, Juett, Keown, Moeller, Ploeger, and Stacy, individually, and all of them collectively, as employees of Exhibitgroup, and especially McCoy and Zalenski as officers of Exhibitgroup, each had common law fiduciary duties to Exhibitgroup. Also, they each had a duty of loyalty not to take any action which would be injurious to Exhibitgroup. Through the actions described above, however, McCoy and each Crossclaim-Defendant individually, and all of them collectively, have engaged in grossly unethical activity and double-dealing to the great detriment of Exhibitgroup. This includes, without limitation, soliciting Exhibitgroup's employees, customers, and potential customers to breach their agreements with Exhibitgroup; wrongfully interfering with such agreements or potential agreements; stealing or unlawfully converting Exhibitgroup's corporate opportunities; stealing or misappropriating Exhibitgroup's Trade Secrets; and unfairly competing with Exhibitgroup.

c.    Accordingly, Exhibitgroup and Viad seek temporary and permanent injunctions as set forth below.

d.    In addition, or in the alternative, Exhibitgroup and Viad have been damaged by McCoy's and the Crossclaim-Defendants' conduct in an amount within the jurisdictional limits of this Court, for which Exhibitgroup and Viad now sue.

47.    **Civil Conspiracy**

a.    Exhibitgroup and Viad incorporate the allegations contained in Sections 1 – 46 above.

30619240.1
AMENDED ANSWER, COUNTERCLAIM, CROSSCLAIMS, APPLICATION FOR TEMPORARY
RESTRAINING ORDER, AND APPLICATION FOR TEMPORARY AND PERMANENT INJUNCTIONS

PAGE 47

b.   McCoy, Zalenski, Arient, Barker, Buhler, Cohn, Hamill, Juett, Keown, Moeller, Ploeger, and Stacy planned, assisted, condoned, and encouraged each other's illegal and wrongful acts, as described in detail above with respect to each cause of action.

c.   The object to be accomplished by this civil conspiracy was to harm Exhibitgroup and to enrich McCoy and the Crossclaim-Defendants in regard to their new business venture which is in competition with Exhibitgroup.

d.   McCoy and the Crossclaim-Defendants had a meeting of the minds on the object or course of this illegal activity. Each of them individually, and all of them collectively, engaged in a preconceived plan and unity to design and purpose to injure Exhibitgroup and to enrich themselves.

e.   There was an agreement or unity of purpose on the parts of McCoy and the Crossclaim-Defendants to inflict a wrong against or injury upon Exhibitgroup and Viad.

f.   McCoy and the Crossclaim-Defendants, individually, and all of them collectively, committed numerous overt acts in the pursuit of their conspiracy, as described in detail above with respect to each cause of action.

g.   McCoy and the Crossclaim-Defendants, as co-conspirators, each are responsible for all acts performed by any of them in furtherance of this unlawful conspiracy. They each are jointly and severally liable for the above-described causes of action, as well as for the damages suffered by Exhibitgroup and Viad.

h.   Accordingly, Exhibitgroup and Viad seek temporary and permanent injunctions as set forth below.

30619240.1
AMENDED ANSWER, COUNTERCLAIM, CROSSCLAIMS, APPLICATION FOR TEMPORARY
RESTRAINING ORDER, AND APPLICATION FOR TEMPORARY AND PERMANENT INJUNCTIONS

PAGE 48

i.      In addition, and as an alternative, Exhibitgroup and Viad have been damaged as a result of this civil conspiracy in an amount within the jurisdictional limits of this Court, for which Exhibitgroup and Viad now sue.

48.    **Breach of Contract – Count I**

a.      Exhibitgroup and Viad incorporate the allegations contained in Sections 1 – 47.

b.      McCoy and the Crossclaim-Defendants each signed agreements with Exhibitgroup to follow and abide by the "Viad Corp. Code of Corporate Conduct."

c.      Notwithstanding these contractual commitments, McCoy and the individual Crossclaim-Defendants repeatedly and flagrantly violated them by, among other things, engaging in gross conflicts of interest and unethical conduct, violating Exhibitgroup's policies, engaging in outside business affairs while employed by Exhibitgroup, as well as misusing and stealing Exhibitgroup's resources and Trade Secrets, breaching their fiduciary and loyalty duties, and interfering with Exhibitgroup's contracts and business relationships.

d.      McCoy and the individual Crossclaim-Defendants are in breach of their Agreements, as described above. Accordingly Exhibitgroup and Viad seek temporary and permanent injunctions as set forth below.

e.      In addition, and in the alternative, Exhibitgroup and Viad have been damaged by McCoy's and the individual Crossclaim-Defendants' conduct in an amount within the jurisdictional limits of this Court, for which Exhibitgroup and Viad now sue.

49.    **Breach of Contract – Count II**

30619240.1
AMENDED ANSWER, COUNTERCLAIM, CROSSCLAIMS, APPLICATION FOR TEMPORARY
RESTRAINING ORDER, AND APPLICATION FOR TEMPORARY AND PERMANENT INJUNCTIONS

PAGE 49

a.   Exhibitgroup and Viad hereby incorporate the allegations contained in Sections  1 –48 above.

b.   McCoy and the individual Crossclaim-Defendants each signed Exhibitgroup's "Employee Confidential Information and Proprietary Interest Agreement[s]," its "Use of Company-Owned and Issued Computer Systems Agreement[s]," as well as its "Employee's Patent and Trade Secret Agreement[s]."

c.   Notwithstanding these contractual commitments, McCoy and the individual Crossclaim-Defendants repeatedly and flagrantly violated them by, among other things, misappropriating Exhibitgroup's Trade Secrets and using them to their own benefit and that of Stak, but to the detriment of Exhibitgroup; and taking electronically-stored or hard copy documents which contain Exhibitgroup's Trade Secrets with the intent and purpose of unlawfully converting them to their own use and that of Stak but to the detriment of Exhibitgroup and Viad.

d.   McCoy and the individual Crossclaim-Defendants are in breach of their Agreements, as described above.  Accordingly, Exhibitgroup and Viad seek temporary and permanent injunctions as set forth below.

e.   Additionally, and in the alternative, Exhibitgroup and Viad have been damaged by McCoy's and the individual Crossclaim-Defendants' conduct in an amount within the jurisdictional limits of this Court, for which Exhibitgroup and Viad now sue.

50.   **Breach of Contract – Count III**

a.   Exhibitgroup and Viad hereby incorporate the allegations of Section 1 – 49 above.

30619240.1
AMENDED ANSWER, COUNTERCLAIM, CROSSCLAIMS, APPLICATION FOR TEMPORARY
RESTRAINING ORDER, AND APPLICATION FOR TEMPORARY AND PERMANENT INJUNCTIONS

PAGE 50

b.    McCoy and the individual Crossclaim-Defendants each agreed to be bound by Exhibitgroup's "Always Honest Manual," as well as (for McCoy and many of the Crossclaim-Defendants) Exhibitgroup's "Employee Handbook," and "Employee Guide."

c.    Notwithstanding these contractual commitments, McCoy and the individual Crossclaim-Defendants repeatedly and flagrantly violated them by engaging in the activity detailed above.

d.    Accordingly, Exhibitgroup and Viad seek temporary and permanent injunctions as set forth below.

e.    Additionally, and in the alternative, Exhibitgroup and Viad have been damaged by McCoy's and the individual Crossclaim-Defendants' conduct in an amount within the jurisdictional limits of this Court, for which Exhibitgroup and Viad now sue.

51.   **Breach of Contract – Count IV**

a.    Exhibitgroup and Viad hereby incorporate the allegations contained in Sections 1 – 50 above.

b.    Through the "Employee Confidential Information, Non-Compete, and Proprietary Interest Agreement[s]" which they signed, McCoy and Juett agreed that, for a period of twelve (12) months following the termination of their employment with Exhibitgroup, they would not "either directly or indirectly as an employee, consultant, investor, or owner, direct or attempt to direct from [Exhibitgroup] any business whatsoever by influencing, or attempting to influence" customers of Exhibitgroup.

30619240.1
AMENDED ANSWER, COUNTERCLAIM, CROSSCLAIMS, APPLICATION FOR TEMPORARY
RESTRAINING ORDER, AND APPLICATION FOR TEMPORARY AND PERMANENT INJUNCTIONS

PAGE 51

c.    Notwithstanding these contractual commitments, McCoy and Juett have flagrantly violated them.

d.    Since McCoy and Juett are in breach of this Agreement, Exhibitgroup and Viad seek temporary and permanent injunctions as set forth below.

e.    Additionally, and in the alternative, Exhibitgroup and Viad have been damaged by McCoy's and Juett's conduct in an amount in excess of the jurisdictional limits of this Court, for which Exhibitgroup and Viad now sue.

## VI.
## APPLICATION FOR TEMPORARY AND PERMANENT INJUNCTIONS

52.    Exhibitgroup and Viad hereby incorporate the allegations contained in Sections 1 – 51 above.

53.    Exhibitgroup and Viad requests a temporary, and then a permanent injunction against McCoy and the Crossclaim-Defendants in order to protect evidence relevant to this lawsuit; to prevent McCoy and the Crossclaim-Defendants' probable or inevitable use or disclosure of Exhibitgroup's Trade Secrets, and/or the actual use or disclosure of same; to prevent tortious interference with Exhibitgroup's contracts with its employees, suppliers, contractors, consultants, and representatives; to prevent wrongful interference with Exhibitgroup's business and contractual relations with these individuals and organizations; to prevent McCoy and Zalenski from stealing or converting Exhibitgroup's corporate opportunities; to prevent the continuing breaches by McCoy and the individual Crossclaim-Defendants of their duties of loyalty and fiduciary duties to Exhibitgroup; to stop McCoy and the individual Crossclaim-Defendants from their acts of unfair competition; to prevent McCoy and Juett from violating their covenants not to compete against Exhibitgroup; to shut down McCoy and individual Crossclaim-Defendants' civil conspiracy

30619240.1
AMENDED ANSWER, COUNTERCLAIM, CROSSCLAIMS, APPLICATION FOR TEMPORARY
RESTRAINING ORDER, AND APPLICATION FOR TEMPORARY AND PERMANENT INJUNCTIONS

PAGE 52

against Exhibitgroup; and to prevent the continuing violation by McCoy and these individual Crossclaim-Defendants of their various contractual obligations as described above.

54.    Time is of the essence as the above-described tortious actions and contractual violations of McCoy and these Crossclaim-Defendants in attempting to unfairly compete with Exhibitgroup, if successful, could have serious and lasting consequences for Exhibitgroup and Viad for which monetary damage alone would not be an adequate remedy. In short, Exhibitgroup and Viad will be irreparably injured if the requested equitable relief is not granted. On the other hand, if McCoy and these Crossclaim-Defendants are not engaging in the actions alleged in this Counterclaim and Crossclaim, such equitable relief will be of no harm to them whatsoever. Further, it is likely that Exhibitgroup and Viad will prevail on the merits of this action. Still further, the public will not be harmed if the requested equitable relief is granted.

55.    Therefore, Exhibitgroup and Viad seek a temporary, and then later a permanent injunction, restraining and enjoining McCoy and the Crossclaim-Defendants, as well as any person acting in concert with them, as follows:

     a.    That McCoy, Zalenski, Stak, Arient, Barker, Buhler, Cohn, Hamill, Juett, Keown, Moeller, Ploeger, and Stacy, as well as all persons acting in concert with them, be restrained and enjoined from using, disclosing, or transferring any Trade Secrets which they learned, acquired, or developed during their employment with Exhibitgroup or its predecessor, Horton. This includes, without limitation, forecast and sales plans, kiosk body types, estimating documents and information, small parts lists, financial information, product design information, computer assisted design drawings and information, cut tickets, vendor information, items specific to the exhibit business, mall information, standardized internal processes, personnel information, and customer lists and information, all as detailed in

30619240.1
AMENDED ANSWER, COUNTERCLAIM, CROSSCLAIMS, APPLICATION FOR TEMPORARY
RESTRAINING ORDER, AND APPLICATION FOR TEMPORARY AND PERMANENT INJUNCTIONS

PAGE 53

Sections 24 and 25 of this AMENDED ANSWER, COUNTERCLAIM, CROSSCLAIMS, APPLICATION FOR TEMPORARY RESTRAINING ORDER, AND APPLICATION FOR TEMPORARY AND PERMANENT INJUNCTIONS, and any other of Exhibitgroup's Trade Secrets, including but not limited to information about the areas of knowledge of remaining Exhibitgroup employees, and the identity of Exhibitgroup's contracts, potential contracts, contractors, customers, and potential customers;

b.   That McCoy, Zalenski, Stak, Arient, Barker, Buhler, Cohn, Hamill, Juett, Keown, Moeller, Ploeger, and Stacy, as well as all persons acting in concert with them, be restrained and enjoined from developing, using, marketing or selling to any Exhibitgroup customer or potential customer any of the services developed or sold through the use of Exhibitgroup's Trade Secrets, knowledge, or data;

c.   That McCoy, Zalenski, Stak, Arient, Barker, Buhler, Cohn, Hamill, Juett, Keown, Moeller, Ploeger, and Stacy, and all persons acting in concert with them, be restrained and enjoined from destroying, concealing, or disposing of any documents and/or electronic data which might be relevant to this lawsuit, pending production of same to Exhibitgroup and Viad in discovery.

d.   That McCoy, Zalenski, Stak, Arient, Barker, Buhler, Cohn, Hamill, Juett, Keown, Moeller, Ploeger, and Stacy, and all persons acting in concert with them, be restrained and enjoined from destroying, concealing, or disposing of any documents, files, electronic data or other materials obtained from or belonging to Exhibitgroup or Viad, or containing or referring to Exhibitgroup's Trade Secret information, or causing or suffering others to do so;

30619240.1
AMENDED ANSWER, COUNTERCLAIM, CROSSCLAIMS, APPLICATION FOR TEMPORARY
RESTRAINING ORDER, AND APPLICATION FOR TEMPORARY AND PERMANENT INJUNCTIONS

PAGE 54

e.  That McCoy, Zalenski, Stak, Arient, Barker, Buhler, Cohn, Hamill, Juett, Keown, Moeller, Ploeger, and Stacy, and all persons acting in concert with them, be restrained and enjoined from altering, deleting, removing, or writing over in any respect any documents, computer files, data, diskettes, or any other thing relating in any way to Exhibitgroup, Viad or Stak, or causing or suffering others to do so, until such time as those materials may be turned over in discovery or until further notice of this Court;

f.  That McCoy, Zalenski, Stak, Arient, Barker, Buhler, Cohn, Hamill, Juett, Keown, Moeller, Ploeger, and Stacy, and all persons acting in concert with them, be restrained and enjoined from directly or indirectly accessing or using any computer now in their possession, custody, or control, to which they have had direct or indirect access since they left Exhibitgroup's employment, along with any floppy disks, hard drives, tapes, back-up, CDs, or other storage units containing data that has been retrieved, located, revised, sorted, received, or transmitted using such computer(s), or causing or suffering others to do so;

g.  That McCoy, Zalenski, Stak, Arient, Barker, Buhler, Cohn, Hamill, Juett, Keown, Moeller, Ploeger, and Stacy, and all persons acting in concert with them, be restrained and enjoined from utilizing or profiting from Exhibitgroup's Trade Secrets that they have been relying upon or using in connection with their new business venture;

h.  That McCoy, Zalenski, and Stak be restrained and enjoined from employing or working with Arient, Buhler, Cohn, Juett, Keown, Moeller, Ploeger, or Stacy, and all persons acting in concert with them, in any capacity in which these persons will probably or inevitably use or disclose any of Exhibitgroup's Trade Secrets;

30619240.1
AMENDED ANSWER, COUNTERCLAIM, CROSSCLAIMS, APPLICATION FOR TEMPORARY
RESTRAINING ORDER, AND APPLICATION FOR TEMPORARY AND PERMANENT INJUNCTIONS

PAGE 55

i.     That McCoy, Zalenski, Stak, Arient, Barker, Buhler, Cohn, Hamill, Juett, Keown, Moeller, Ploeger, and Stacy, and all persons acting in concert with them, be restrained and enjoined from any business or activity in which they would probably or inevitably use or disclose any of Exhibitgroup's Trade Secrets;

j.     That McCoy, Zalenski, Stak, Arient, Barker, Buhler, Cohn, Hamill, Juett, Keown, Moeller, Ploeger, and Stacy, and all persons acting in concert with them, be restrained and enjoined from tortiously interfering with Exhibitgroup's contracts and business relationships with its employees, suppliers, contractors, consultants, customers, and potential customers;

k.     That McCoy, Zalenski, Stak, Arient, Barker, Buhler, Cohn, Hamill, Juett, Keown, Moeller, Ploeger, and Stacy, and all persons acting in concert with them, be restrained and enjoined from wrongfully interfering with Exhibitgroup's prospective contracts and business relationships with Exhibitgroup's employees, suppliers, contractors, consultants, representatives, customers, and potential customers;

l.     That McCoy and Zalenski, and all persons acting in concert with them, be restrained and enjoined from stealing or converting Exhibitgroup's corporate opportunities.  This includes, without limitation, Weyerhaeuser Corporation, Build-A-Bear, Inc., Columbiana Center, The Mills Corporation, Urban Retail Properties, and Westfield Corporation;

m.     That McCoy, Zalenski, Stak, Arient, Barker, Buhler, Cohn, Hamill, Juett, Keown, Moeller, Ploeger, and Stacy, and all persons acting in concert with them, be restrained and enjoined from further breaches of their duties of loyalty, as well as their fiduciary duties to Exhibitgroup;

30619240.1
AMENDED ANSWER, COUNTERCLAIM, CROSSCLAIMS, APPLICATION FOR TEMPORARY
RESTRAINING ORDER, AND APPLICATION FOR TEMPORARY AND PERMANENT INJUNCTIONS

PAGE 56

n.  That McCoy, Zalenski, Stak, Arient, Barker, Buhler, Cohn, Hamill, Juett, Keown, Moeller, Ploeger, and Stacy, and all persons acting in concert with them, be restrained and enjoined from continuing their civil conspiracy against the interests of Exhibitgroup;

o.  That McCoy, Zalenski, Stak, Arient, Barker, Buhler, Cohn, Hamill, Juett, Keown, Moeller, Ploeger, and Stacy, and all persons acting in concert with them, be restrained and enjoined from continuing to violate Exhibitgroup's "Employee Confidential Information and Proprietary Interest Agreement," its "Employee's Patent and Trade Secret Agreement," its "Use of Company-Owned and Issued Computer Systems Agreement," its "Always Honest Manual," "Employee Handbook," and "Employee Guide," as well as the "Viad Corp. Code of Corporate Conduct;"

p.  That McCoy and Juett and all persons acting in concert with them, be restrained and enjoined from violating their "Employee Confidential Information, Non-Compete, and Proprietary Interest Agreement."

56.  Further, Exhibitgroup and Viad ask that the Court restrain and enjoin McCoy, Zalenski, Stak, Arient, Barker, Buhler, Cohn, Hamill, Juett, Keown, Moeller, Ploeger, and Stacy, and all persons acting in concert with them, including their agents, employees, and attorneys, and also including any third parties to whom McCoy and/or these Crossclaim-Defendants have shared or disclosed any of Exhibitgroup's Trade Secrets, from in any way using or placing themselves in a position where they probably or inevitably will use, disclose, or transfer any of Exhibitgroup's Trade Secrets.

57.  Unless a temporary, and then a permanent injunction is granted by the Court, Exhibitgroup and Viad will suffer immediate and irreparable injury and harm because if McCoy's and the

30619240.1
AMENDED ANSWER, COUNTERCLAIM, CROSSCLAIMS, APPLICATION FOR TEMPORARY
RESTRAINING ORDER, AND APPLICATION FOR TEMPORARY AND PERMANENT INJUNCTIONS

PAGE 57

Crossclaim-Defendants' actions are not restrained and enjoined, Exhibitgroup will lose substantial and valuable Trade Secrets, as well as the benefits of its existing relationships with employees, suppliers, contractors, consultants, representatives, customers, and potential customers. Exhibitgroup and Viad have no adequate remedy at law.

58. It should be noted that in the "Confidential Information and Proprietary Interest Agreement" which McCoy and the Crossclaim-Defendants signed, they specifically acknowledged that, among other relief, an injunction would be appropriate for any violation of said Agreements.

## VII.
## APPLICATION FOR TEMPORARY RESTRAINING ORDER

59. Exhibitgroup and Viad hereby incorporate the allegations contained in Sections 1 – 58 above.

60. Exhibitgroup and Viad request a temporary restraining order against McCoy and the Crossclaim-Defendants in order to protect evidence relevant to this lawsuit; to prevent tortious interference with Exhibitgroup's contracts with its employees; and to prevent wrongful interference into Exhibitgroup's business and contractual relations with these employees.

61. Time is of the essence as the above-described tortious actions and contractual violations of McCoy and these Crossclaim-Defendants in attempting to gut Exhibitgroup's workforce, if successful, could have serious and lasting consequences for Exhibitgroup for which monetary damage alone would not be an adequate remedy. In short, Exhibitgroup and Viad will be irreparably injured if the requested equitable relief is not granted. On the other hand, if McCoy and these Crossclaim-Defendants are not engaging in the actions alleged, such equitable relief will be of no harm to them whatsoever. Further, it is likely that Exhibitgroup and Viad will prevail on the merits of this action. Still further, the public will not be harmed if the requested equitable relief is granted.

30619240.1
AMENDED ANSWER, COUNTERCLAIM, CROSSCLAIMS, APPLICATION FOR TEMPORARY
RESTRAINING ORDER, AND APPLICATION FOR TEMPORARY AND PERMANENT INJUNCTIONS

PAGE 58

62.     Therefore, Exhibitgroup and Viad seek a temporary restraining order, restraining and enjoining McCoy and the Crossclaim-Defendants, as well as any person acting in concert with them, as follows:

a.      That McCoy, Zalenski, Stak, Arient, Barker, Buhler, Cohn, Hamill, Juett, Keown, Moeller, Ploeger, and Stacy, and all persons acting in concert with them, be restrained and enjoined from destroying, concealing, or disposing of any documents and/or electronic data which might be relevant to this lawsuit, pending production of same to Exhibitgroup and Viad in discovery.

b.      That McCoy, Zalenski, Stak, Arient, Barker, Buhler, Cohn, Hamill, Juett, Keown, Moeller, Ploeger, and Stacy, and all persons acting in concert with them, be restrained and enjoined from destroying, concealing, or disposing of any documents, files, electronic data or other materials obtained from or belonging to Exhibitgroup or Viad, or containing or referring to Exhibitgroup's Trade Secret information, or causing or suffering others to do so;

c.      That McCoy, Zalenski, Stak, Arient, Barker, Buhler, Cohn, Hamill, Juett, Keown, Moeller, Ploeger, and Stacy, and all persons acting in concert with them, be restrained and enjoined from altering, deleting, removing, or writing over in any respect any documents, computer files, data, diskettes, or any other thing relating in any way to Exhibitgroup or Viad, or causing or suffering others to do so, until such time as those materials may be turned over in discovery or until further notice of this Court;

d.      That McCoy, Zalenski, Stak, Arient, Barker, Buhler, Cohn, Hamill, Juett, Keown, Moeller, Ploeger, and Stacy, and all persons acting in concert with them, be restrained and enjoined from directly or indirectly accessing or using any computer now in their possession,

30619240.1
AMENDED ANSWER, COUNTERCLAIM, CROSSCLAIMS, APPLICATION FOR TEMPORARY
RESTRAINING ORDER, AND APPLICATION FOR TEMPORARY AND PERMANENT INJUNCTIONS

PAGE 59

custody or control, to which they have had direct or indirect access since they left Exhibitgroup's employment, along with any floppy disks, hard drives, tapes, back-up, CDs, or other storage units containing data that has been retrieved, located, revised, sorted, received, or transmitted using such computer(s), or causing or suffering others to do so;

e.   That McCoy, Zalenski, Stak, Arient, Barker, Buhler, Cohn, Hamill, Juett, Keown, Moeller, Ploeger, and Stacy, and all persons acting in concert with them, be restrained and enjoined from tortiously interfering with Exhibitgroup's contracts and business relationships with its employees;

f.   That McCoy, Zalenski, Stak, Arient, Barker, Buhler, Cohn, Hamill, Juett, Keown, Moeller, Ploeger, and Stacy, and all persons acting in concert with them, be restrained and enjoined from continuing to violate Exhibitgroup's "Employee Confidential Information and Proprietary Interest Agreement," with respect to soliciting and hiring Exhibitgroup's employees, consultants, and representatives.

63.   Unless a temporary restraining order is granted by the Court, Exhibitgroup and Viad will suffer immediate and irreparable injury and harm because if McCoy's and Crossclaim-Defendants' actions are not restrained and enjoined, as detailed above, Exhibitgroup and Viad will lose the benefits of its existing relationships with employees, consultants, and representatives. Exhibitgroup and Viad has no adequate remedy at law.

64.   It should be noted that in the "Confidential Information and Proprietary Interest Agreement" which McCoy and the Crossclaim-Defendants signed, they specifically acknowledged that, among other relief, an injunction would be appropriate for any violation of said Agreements.

30619240.1
AMENDED ANSWER, COUNTERCLAIM, CROSSCLAIMS, APPLICATION FOR TEMPORARY
RESTRAINING ORDER, AND APPLICATION FOR TEMPORARY AND PERMANENT INJUNCTIONS

PAGE 60

# VIII.
## PRAYER

65.     WHEREFORE, PREMISES CONSIDERED, Exhibitgroup and Viad respectfully pray that McCoy, Zalenski, Stak, Arient, Barker, Buhler, Cohn, Hamill, Juett, Keown, Moeller, Ploeger, and Stacy, be cited to appear and that the Court grant Exhibitgroup and Viad the following relief:

a.     **Temporary and Permanent Injunction**

That, as McCoy and the Crossclaim-Defendants agreed would be appropriate, the Court grant temporary and permanent injunctions restraining McCoy, Zalenski, Stak, Arient, Barker, Buhler, Cohn, Hamill, Juett, Keown, Moeller, Ploeger, and Stacy, and all persons acting in concert with them, their agents, servants, employees, and attorneys, including any third parties to whom they have shared or disclosed any of Exhibitgroup's Trade Secrets, as follows:

1.     That McCoy, Zalenski, Stak, Arient, Barker, Buhler, Cohn, Hamill, Juett, Keown, Moeller, Ploeger, and Stacy, as well as all persons acting in concert with them, be restrained and enjoined from using, disclosing, or transferring any Trade Secrets which they learned, acquired, or developed during their employment with Exhibitgroup or its predecessor, Horton. This includes, without limitation, forecast and sales plans, kiosk body types, estimating documents and information, small parts lists, financial information, product design information, computer assisted design drawings and information, cut tickets, vendor information, items specific to the exhibit business, mall information, standardized internal processes, personnel information, and

30619240.1
AMENDED ANSWER, COUNTERCLAIM, CROSSCLAIMS, APPLICATION FOR TEMPORARY
RESTRAINING ORDER, AND APPLICATION FOR TEMPORARY AND PERMANENT INJUNCTIONS

PAGE 61

customer lists and information, all as detailed in Sections 24 and 25 of this AMENDED ANSWER, COUNTERCLAIM, CROSSCLAIMS, APPLICATION FOR TEMPORARY RESTRAINING ORDER, AND APPLICATION FOR TEMPORARY AND PERMANENT INJUNCTIONS, and any other of Exhibitgroup's Trade Secrets, including but not limited to information about the areas of knowledge of remaining Exhibitgroup employees, and the identity of Exhibitgroup's contracts, potential contracts, contractors, customers, and potential customers;

2.  That McCoy, Zalenski, Stak, Arient, Barker, Buhler, Cohn, Hamill, Juett, Keown, Moeller, Ploeger, and Stacy, as well as all persons acting in concert with them, be restrained and enjoined from developing, using, marketing or selling to any Exhibitgroup customer or potential customer any of the services developed or sold through the use of Exhibitgroup's Trade Secrets, knowledge, or data;

3.  That McCoy, Zalenski, Stak, Arient, Barker, Buhler, Cohn, Hamill, Juett, Keown, Moeller, Ploeger, and Stacy, and all persons acting in concert with them, be restrained and enjoined from destroying, concealing, or disposing of any documents and/or electronic data which might be relevant to this lawsuit, pending production of same to Exhibitgroup and Viad in discovery.

4.  That McCoy, Zalenski, Stak, Arient, Barker, Buhler, Cohn, Hamill, Juett, Keown, Moeller, Ploeger, and Stacy, and all persons acting in concert with them, be restrained and enjoined from destroying, concealing, or disposing of any documents, files, electronic data or other materials obtained from or

belonging to Exhibitgroup or Viad, or containing or referring to Exhibitgroup's Trade Secret information, or causing or suffering others to do so;

5.      That McCoy, Zalenski, Stak, Arient, Barker, Buhler, Cohn, Hamill, Juett, Keown, Moeller, Ploeger, and Stacy, and all persons acting in concert with them, be restrained and enjoined from altering, deleting, removing, or writing over in any respect any documents, computer files, data, diskettes, or any other thing relating in any way to Exhibitgroup or Viad, or causing or suffering others to do so, until such time as those materials may be turned over in discovery or until further notice of this Court;

6.      That McCoy, Zalenski, Stak, Arient, Barker, Buhler, Cohn, Hamill, Juett, Keown, Moeller, Ploeger, and Stacy, and all persons acting in concert with them, be restrained and enjoined from directly or indirectly accessing or using any computer now in their possession, custody or control, to which they have had direct or indirect access since they left Exhibitgroup's employment, along with any floppy disks, hard drives, tapes, back-up, CDs, or other storage units containing data that has been retrieved, located, revised, sorted, received, or transmitted using such computer(s), or causing or suffering others to do so;

7.      That McCoy, Zalenski, Stak, Arient, Barker, Buhler, Cohn, Hamill, Juett, Keown, Moeller, Ploeger, and Stacy, and all persons acting in concert with them, be restrained and enjoined from utilizing or profiting from

30619240.1
AMENDED ANSWER, COUNTERCLAIM, CROSSCLAIMS, APPLICATION FOR TEMPORARY
RESTRAINING ORDER, AND APPLICATION FOR TEMPORARY AND PERMANENT INJUNCTIONS

PAGE 63

Exhibitgroup's Trade Secrets that they have been relying upon or using in connection with their new business venture;

8.     That McCoy, Zalenski, and Stak be restrained and enjoined from employing or working with Arient, Buhler, Cohn, Juett, Keown, Moeller, Ploeger, or Stacy, and all persons acting in concert with them, in any capacity in which these persons will probably or inevitably use or disclose any of Exhibitgroup's Trade Secrets;

9.     That McCoy, Zalenski, Stak, Arient, Barker, Buhler, Cohn, Hamill, Juett, Keown, Moeller, Ploeger, and Stacy, and all persons acting in concert with them, be restrained and enjoined from any business or activity in which they would probably or inevitably use or disclose any of Exhibitgroup's Trade Secrets;

10.     That McCoy, Zalenski, Stak, Arient, Barker, Buhler, Cohn, Hamill, Juett, Keown, Moeller, Ploeger, and Stacy, and all persons acting in concert with them, be restrained and enjoined from tortiously interfering with Exhibitgroup's contracts and business relationships with its employees, suppliers, contractors, consultants, customers, and potential customers;

11.     That McCoy, Zalenski, Stak, Arient, Barker, Buhler, Cohn, Hamill, Juett, Keown, Moeller, Ploeger, and Stacy, and all persons acting in concert with them, be restrained and enjoined from wrongfully interfering with Exhibitgroup's prospective contracts and business relationships with

30619240.1
AMENDED ANSWER, COUNTERCLAIM, CROSSCLAIMS, APPLICATION FOR TEMPORARY
RESTRAINING ORDER, AND APPLICATION FOR TEMPORARY AND PERMANENT INJUNCTIONS

PAGE 64

Exhibitgroup's employees, suppliers, contractors, consultants, representatives, customers, and potential customers;

12. That McCoy and Zalenski, and all persons acting in concert with them, be restrained and enjoined from stealing or converting Exhibitgroup's corporate opportunities. This includes, without limitation, Weyerhaeuser Corporation, Build-A-Bear, Inc., Columbiana Center, The Mills Corporation, Urban Retail Properties, and Westfield Corporation;

13. That McCoy, Zalenski, Stak, Arient, Barker, Buhler, Cohn, Hamill, Juett, Keown, Moeller, Ploeger, and Stacy, and all persons acting in concert with them, be restrained and enjoined from further breaches of their duties of loyalty, as well as their fiduciary duties to Exhibitgroup;

14. That McCoy, Zalenski, Stak, Arient, Barker, Buhler, Cohn, Hamill, Juett, Keown, Moeller, Ploeger, and Stacy, and all persons acting in concert with them, be restrained and enjoined from continuing their civil conspiracy against the interests of Exhibitgroup;

15. That McCoy, Zalenski, Stak, Arient, Barker, Buhler, Cohn, Hamill, Juett, Keown, Moeller, Ploeger, and Stacy, and all persons acting in concert with them, be restrained and enjoined from continuing to violate Exhibitgroup's "Employee Confidential Information and Proprietary Interest Agreement," its "Employee's Patent and Trade Secret Agreement," its "Use of Company-Owned and Issued Computer Systems Agreement," its "Always Honest

30619240.1
AMENDED ANSWER, COUNTERCLAIM, CROSSCLAIMS, APPLICATION FOR TEMPORARY
RESTRAINING ORDER, AND APPLICATION FOR TEMPORARY AND PERMANENT INJUNCTIONS

PAGE 65

Manual," "Employee Handbook," and "Employee Guide," as well as the "Viad Corp. Code of Corporate Conduct;"

16. That McCoy and Juett and all persons acting in concert with them, be restrained and enjoined from violating their "Employee Confidential Information, Non-Compete, and Proprietary Interest Agreement."

b. **Temporary Restraining Order**

As McCoy and the Crossclaim-Defendants agreed would be appropriate, Exhibitgroup requests a temporary restraining order against McCoy and the Crossclaim-Defendants in order to protect evidence relevant to this lawsuit; to prevent tortious interference with Exhibitgroup's contracts with its employees; and to prevent wrongful interference into Exhibitgroup's business and contractual relations with these employees as follows:

1. That McCoy, Zalenski, Stak, Arient, Barker, Buhler, Cohn, Hamill, Juett, Keown, Moeller, Ploeger, and Stacy, and all persons acting in concert with them, be restrained and enjoined from destroying, concealing, or disposing of any documents and/or electronic data which might be relevant to this lawsuit, pending production of same to Exhibitgroup and Viad in discovery.

2. That McCoy, Zalenski, Stak, Arient, Barker, Buhler, Cohn, Hamill, Juett, Keown, Moeller, Ploeger, and Stacy, and all persons acting in concert with them, be restrained and enjoined from destroying, concealing, or disposing of any documents, files, electronic data or other materials obtained from or belonging to Exhibitgroup or Viad, or containing or referring to

30619240.1
AMENDED ANSWER, COUNTERCLAIM, CROSSCLAIMS, APPLICATION FOR TEMPORARY
RESTRAINING ORDER, AND APPLICATION FOR TEMPORARY AND PERMANENT INJUNCTIONS

PAGE 66

Exhibitgroup's Trade Secret information, or causing or suffering others to do so;

3.    That McCoy, Zalenski, Stak, Arient, Barker, Buhler, Cohn, Hamill, Juett, Keown, Moeller, Ploeger, and Stacy, and all persons acting in concert with them, be restrained and enjoined from altering, deleting, removing, or writing over in any respect any documents, computer files, data, diskettes, or any other thing relating in any way to Exhibitgroup or Viad, or causing or suffering others to do so, until such time as those materials may be turned over in discovery or until further notice of this Court;

4.    That McCoy, Zalenski, Stak, Arient, Barker, Buhler, Cohn, Hamill, Juett, Keown, Moeller, Ploeger, and Stacy, and all persons acting in concert with them, be restrained and enjoined from directly or indirectly accessing or using any computer now in their possession, custody or control, to which they have had direct or indirect access since they left Exhibitgroup's employment, along with any floppy disks, hard drives, tapes, back-up, CDs, or other storage units containing data that has been retrieved, located, revised, sorted, received, or transmitted using such computer(s), or causing or suffering others to do so;

5.    That McCoy, Zalenski, Stak, Arient, Barker, Buhler, Cohn, Hamill, Juett, Keown, Moeller, Ploeger, and Stacy, and all persons acting in concert with them, be restrained and enjoined from tortiously interfering with Exhibitgroup's contracts and business relationships with its employees;

30619240.1
AMENDED ANSWER, COUNTERCLAIM, CROSSCLAIMS, APPLICATION FOR TEMPORARY
RESTRAINING ORDER, AND APPLICATION FOR TEMPORARY AND PERMANENT INJUNCTIONS

PAGE 67

6.      That McCoy, Zalenski, Stak, Arient, Barker, Buhler, Cohn, Hamill, Juett, Keown, Moeller, Ploeger, and Stacy, and all persons acting in concert with them, be restrained and enjoined from continuing to violate Exhibitgroup's "Employee Confidential Information and Proprietary Interest Agreement," with respect to soliciting and hiring Exhibitgroup's employees, consultants and representatives.

c.    **Other Relief**

Exhibitgroup and Viad hereby petition the Court for the following additional relief:

1.      That Exhibitgroup and Viad be awarded actual and punitive damages against McCoy and the Crossclaim-Defendants on all causes of action alleged herein.

2.      That this Court award Exhibitgroup and Viad recovery of their attorneys' fees and costs in pursuing this lawsuit;

3.      That this Court award Exhibitgroup and Viad recovery of pre-judgment and post-judgment interest as allowed by law.

4.      That this Court grant Exhibitgroup and Viad such other and further relief, both general and special, at law or in equity, to which Exhibitgroup and Viad may be justly entitled.

30619240.1
AMENDED ANSWER, COUNTERCLAIM, CROSSCLAIMS, APPLICATION FOR TEMPORARY
RESTRAINING ORDER, AND APPLICATION FOR TEMPORARY AND PERMANENT INJUNCTIONS

PAGE 68

Respectfully submitted,

By: _____

Richard M. Kobdish
State Bar No.  11640000
Norlynn B. Price
State Bar No.  02499050
Danielle Alexis Clarkson
State Bar No.  24027915

2200 Ross Avenue, Suite 2800
Dallas, Texas  75201-2784
Telephone:  (214) 855-8000
Facsimile:  (214) 855-8200

OF COUNSEL:
FULBRIGHT & JAWORSKI L.L.P.

Counsel for Defendants Exhibitgroup/Giltspur,
Inc. and Viad Corp., Inc.

30619240.1
AMENDED ANSWER, COUNTERCLAIM, CROSSCLAIMS, APPLICATION FOR TEMPORARY
RESTRAINING ORDER, AND APPLICATION FOR TEMPORARY AND PERMANENT INJUNCTIONS

PAGE 69

CERTIFICATE OF SERVICE

This pleading, AMENDED ANSWER, COUNTERCLAIM, CROSSCLAIMS, APPLICATION FOR TEMPORARY RESTRAINING ORDER, AND APPLICATION FOR TEMPORARY AND PERMANENT INJUNCTIONS, was served in compliance with Rule 5 of the Federal Rules of Civil Procedure via Hand-Delivery, via Process-Server, on this 15 th day of January, 2004.

Mr. Donald Arient
102 Pinewood Place
Lewisville, TX  75067
or
1540 Luna Road
Carrollton, Texas 75006

Mr. Donald Barker
906 Spring Lake Drive
Garland, TX  75043
or
1540 Luna Road
Carrollton, Texas 75006

Mr. John Buhler
1232 Pleasant Oaks
Lewisville, TX  75087
or
1540 Luna Road
Carrollton, Texas 75006

Mr. Garry Cohn
5746 Winton Street
Dallas, TX  75206
or
1540 Luna Road
Carrollton, Texas 75006

Ms. Michelle Hamill
7513 Kingston Drive
Rowlett, TX  75089
or
1540 Luna Road
Carrollton, Texas 75006

Ms. Shannon Juett
8200 Forest Hill Blvd.
Dallas, TX  75218
or
1540 Luna Road
Carrollton, Texas 75006

Mr. Loren Wayne Keown
6501 Oakview Drive
Flower Mound, TX  75022
or
1540 Luna Road
Carrollton, Texas 75006

Mr. Joachim Moeller
350 E. Vista Ridge Mall Dr.
Apt # 1322
Lewisville, TX  75067
or
1540 Luna Road
Carrollton, Texas 75006

Mr. Andrew C. Ploeger
2710 Stone Creek Lane
Corinth, TX  76201
or
1540 Luna Road
Carrollton, Texas 75006

Ms. Marjorie Stacy
2633 Jewett Road
Burleson, TX  76028
or
1540 Luna Road
Carrollton, Texas 75006

30619240.1
AMENDED ANSWER, COUNTERCLAIM, CROSSCLAIMS, APPLICATION FOR TEMPORARY
RESTRAINING ORDER, AND APPLICATION FOR TEMPORARY AND PERMANENT INJUNCTIONS

PAGE 70

Mr. Stanley Zalenski
1012 Hackberry Ct
Carrollton, TX  75007
or
1540 Luna Road
Carrollton, Texas 75006

Stak Design, Inc.
c/o Mr. Rob McCoy
1540 Luna Road
Carrollton, TX  75006

_Danielle Davis Clarkson_
Danielle Alexis Clarkson

## CERTIFICATE OF SERVICE

This pleading, AMENDED ANSWER, COUNTERCLAIM, CROSSCLAIMS, APPLICATION FOR TEMPORARY RESTRAINING ORDER, AND APPLICATION FOR TEMPORARY AND PERMANENT INJUNCTIONS, was served in compliance with Rule 5 of the Federal Rules of Civil Procedure by Certified Mail, Return Receipt Requested on this \_\_\_th day of January, 2004.

Mr. Barry Zisman
Zisman Law Firm, P.C.
1412 Main Street
Twenty-Third Floor
Dallas, Texas 75202

_Danielle Davis Clarkson_
Danielle Alexis Clarkson

30619240.1
AMENDED ANSWER, COUNTERCLAIM, CROSSCLAIMS, APPLICATION FOR TEMPORARY
RESTRAINING ORDER, AND APPLICATION FOR TEMPORARY AND PERMANENT INJUNCTIONS

PAGE 71