

ORIGINAL

FILED

MAR 1 2005

CLERK, U.S. DISTRICT COURT
By _____
NT
Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| ROB J. MCCOY, §<br>    PLAINTIFF, §<br> §<br>v. §<br> §<br>EXHIBITGROUP/GILTSPUR, INC. AND §<br>VIAD CORP, §<br>    DEFENDANTS; §<br> §<br>AND §<br> §<br>EXHIBITGROUP/GILTSPUR, INC. AND §<br>VIAD CORP,. §<br>    COUNTERCLAIM-PLAINTIFFS; §<br> §<br>v. §<br> §<br>ROB J. MCCOY, Individually, and as an §<br>Officer and Director of STAK, Inc. §<br>    COUNTERCLAIM-DEFENDANT, §<br> §<br>AND §<br> §<br>EXHIBITGROUP/GILTSPUR, INC. AND §<br>VIAD CORP. §<br>    CROSSCLAIM-PLAINTIFFS, §<br> §<br>v. §<br> §<br>STAK DESIGN, Inc.; STANLEY §<br>ZALENSKI, Individually, and an Officer §<br>And Director of STAK, Inc.; DONALD §<br>ARIENT, Individually; DONALD BARKER, §<br>Individually; JOHN BUHLER, Individually; §<br>GARRY COHN, Individually; MICHELLE §<br>HAMILL, Individually; SHANNON JUETT, §<br>Individually; LOREN WAYNE KEOWN, §<br>Individually; JOACHIM MOELLER §<br>Individually; ANDREW C. PLOEGER, §<br>Individually; and MARJORIE STACY, §<br>Individually §<br>    CROSSCLAIM-DEFENDANTS §| CIVIL ACTION NO. 3: 03-CV-3050 B |

TABLE OF CONTENTS

I. Introduction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .p 2

II. Statement of Facts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .p 4

III. Argument and Authorities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .p 4

A. Hamill Is Entitled to Summary Judgment on Exhibitgroup and Viad's Counterclaim of Breach of Contract-Count II Alleging Breach of the *Employee Confidential Information and Proprietary Interest Agreement*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .p 6

i. The *EMPLOYEE CONFIDENTIAL INFORMATION AND PROPRIETARY INTEREST AGREEMENT* is unenforceable due to lack of consideration. . . . . . . . . . . . . . . . . . . . . p 7

ii. The non-solicitation provision found in the *EMPLOYEE CONFIDENTIAL INFORMATION AND PROPRIETARY INTEREST AGREEMENT* is unenforceable under Tex. Bus. & Com. Code §15.50 in that it is not ancillary to or part of an otherwise enforceable agreement at the time the agreement was made. . . . . . . . . . . . . . . . . . . . p 8

B. There is No Evidence to Support Viad's Contention that Its "Trade Secrets" Are in fact Trade Secrets. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .p 11

C. Hamill Is Entitled to a No Evidence Summary Judgment on Viad's Claim of Misappropriation of Trade Secrets and Confidential Information Under the Inevitable or Probable Disclosure Doctrine. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .p 15

D. Hamill is Entitled to a No Evidence Summary Judgment on Viad's Claim of Actual Confidential/Proprietary Information and Trade Secrets Misappropriation. . . . . . . . . .p 16

E. Hamill is Entitled to a No Evidence Summary Judgment on Viad's Claim of Tortuous Interference with Contract. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . p 17

F. Hamill is Entitled to a No Evidence Summary Judgment on Viad's Claim of Wrongful Interference with Prospective Contract/Business Relations. . . . . . . . . . . . . . . . . . . . .p 17

G. Hamill is Entitled to a No Evidence Summary Judgment on Viad's Claim of Unfair Competition-Count I. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .p 18

H. Hamill is Entitled to a No Evidence Summary Judgment on Viad's Claim of Breach of Duty of Loyalty as well as Fiduciary Duty. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .p 19

I. Hamill is Entitled to a No Evidence Summary Judgment on Viad's Claim of Civil Conspiracy. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . p 19

J. Hamill is Entitled to a No Evidence Summary Judgment on Viad's Claim of Breach of Contract-Count I. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .p 20

K. Hamill is Entitled to a No Evidence Summary Judgment on Viad's Claim of Breach of Contract-Count II. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .p 21

L. Hamill is Entitled to a No Evidence Summary Judgment on Viad's Claim of Breach of Contract-Count III. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . p 22

IV. Prayer. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . p 22

## TABLE OF AUTHORITIES

### Federal Cases

*American Express Fin. Advisors, Inc. v. Scott,* 955 F. Supp. 688 (N.D. Tex. 1996). . . . p 8

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). . . . . . . . . . . . . . . . . . . . . . . .pp 5, 6

*Hawkspere Shipping Co. v. Intamex*, 390 F.3d 225, 232 (4th Cir.2003). . . . . . . . . . . . .p 6

*General Universal Systems, Inc., et. al v. Larry Mason Lee, et. al* 379 F.3d 131, 41 (5th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . p 15

*Hickson Corp. v. Northern Crossarm Co.,* 357 F.3d 1256, 1259 (11th Cir.2004). . . . . . p 6

*J. Geils Band Employees Benefit Plan v. Smith Barney Shearson, Inc.,* 76 F.3d 1245, 1251 (1st Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . p 6

*MGE UPS Sys., Inc. v. Fakouri Elec. Eng'g,* No. 4:04-CV-445-Y, 2004 U.S. Dist. LEXIS 19274, *9-10 (N.D. Tex. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . ... . . . . . .p 16

*MacDonald v. Delta Air Lines, Inc.,* 94 F.3d 1437, 1440 (10th Cir. 1996). . . . . . . . . . .p 5

*Minka Lighting, Inc. v. Craftmade International Inc.*, 2002 U.S. Dist. LEXIS 19791 (N.D. Tex. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . p 18

*Olander v. Compass Bank,* 172 F. Supp. 2d 846 (S.D. Tex. 2001). . . . . . . . . . . . . . . . .p 8

*Taco Cabana Int'l v. Two Pesos, Inc.,* 932 F.2d 1113, 1123 (5th Cir. 1991). . . . . . . . . p 16

*Taylor Publishing Co. v. Jostens, Inc.*, 36 F. Supp.2d 360, 374 (E.D. Tex. 1999). . . . .p 19

### State Cases

*Baty v. Protech Ins. Co.*, 63 S.W.3d 841, 859-60 (Tex.App.-- Houston [14[th] Dist.] 2001, pet. denied). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .pp 17-18

*Bradford v. Vento*, 48 S.W.3d 749, 757 (Tex.2001). . . . . . . . . . . . . . . . . . . . . . . . . . .p 18

*Burrow v. Acre,* 997 S.W.2d 229, 237 (Tex.1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . .p 19

*Butnaru v. Ford Motor Co.,* 84 S.W.3d 198 (Tex.2002). . . . . . . . . . . . . . . . . . . . . . . . p 17

*C&C Partners v. Sun Exploration & Prod.*, 783 S.W.2d 707, 721 (Tex.App.-- Dallas 1989, writ denied). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . pp 20, 21, 22

*Cardinal Health Staffing Network, Inc. v. Bowen*, 106 S.W.3d 230, 242 (Tex.App.-- Houston [1st Dist.] 2003, no pet.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . pp 15, 16

*Fort Worth Independent School District v. City of Fort Worth*, 22 S.W.3d 831, 841 (Tex. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . p 7

*Hawthorne v. Guenther*, 917 S.W.2d 924, 934-35 (Tex.App.-- Beaumont 1996, writ denied). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . p 19

*Insurance Co. of N. Am. v. Morris*, 981 S.W.2d 667, 675 (Tex.1998) . . . . . . . . . . . . p 20

*Kinzbach Tool Co. v. Corbett-Wallace Corp.*, 160 S.W.2d 509, 513-14 (Tex.1942). . .p 19

*Light v. Centel Cellular Co.*, 883 S.W.2d 642, 643 (Tex. 1994). . . . . . . . . . . . . . . . . . p 10
*Martin v. Credit Protection Ass'n, Inc.*, 793 S.W.2d 667, 670 (Tex. 1990). . . . . . . . . .p 10

*Miller Paper Co. v. Roberts Paper Co.*, 901 S.W.2d 593, 599. (Tex.App.-- Amarillo, 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .pp 7, 8

*Northern Natural Gas v. Conoco, Inc.*, 986 S.W.2d 603, 607 (Tex. 1999). . . . . . . . . . . p 7

*Rugen v. Interactive Bus. Sys., Inc.*, 864 S.W.2d 548, 552 (Tex.App.-- Dallas 1993, no writ) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . p 16

*Security Drilling Co. v. Rathke Oil Co.*, 41 S.W.2d 1019, 1022 (Tex. App. 1931). . . . .p 7

*Southwell v. University of the Incarnate Word*, 974S.W.2d 351, 354-55 (Tex.App.-- San Antonio 1998, pet. denied). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .pp 20, 21, 22

*Texas Gas Utilities Co. v. Barrett*, 460 S.W.2d 409, 412 (Tex. 1970). . . . . . . . . . . . . .p 7

*Tom James of Dallas, Inc. v. Cobb*, 109 S.W.3d 877 (Tex. App. 2003). . . . . . . . . ...p 11

*Totino v. Alexander & Assocs.*, 1998-2 Trade Cas. (CCH) P72,253 (Tex.App.-- Houston). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . p 9

*Trilogy Software, Inc. v. Calidus Software et al.*, 143 S.W.3d 452 (Tex.App.-- Austin 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . p 16

*Trilogy Software, Inc., v. Yinghui Li*, 143 S.W.3d 452, 467 (Tex.App-- Austin 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .pp14, 15

*Wal-Mart Stores v. Stuges*, 52 S.W.3d 711, 726 (Tex.2001). . . . . . . . . . . . . . . . . . . . . p 18

*Winston v. American Med. Int'l, Inc.*, 930 S.W.2d 945, 953 (Tex.App.-- Houston [1st. Dist.] 1996, no writ). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . p 18

<u>Federal Statutes</u>

Fed.R.Civ.P.56(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .p 5

Fed.R.Civ.P.56(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .p 5

Fed.R.Civ.P.56(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .p 5

<u>State Statutes</u>

Tex. Bus. & Com. Code § 15.50. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .pp 2, 5, 7, 8, 9

## HAMILL'S BRIEF IN SUPPORT OF
## MOTION FOR SUMMARY JUDGMENT

Michelle Hamill ("Hamill"), Crossclaim-Defendant, moves this Court to render a summary judgment against Defendants Exhibitgroup/Giltspur, Inc. ("Exhibitgroup") and Viad Corp. ("Viad") (sometimes collectively "Viad"). Hamill files this motion for summary judgment seeking to have summary judgment granted as to the unenforceability of the *EMPLOYEE CONFIDENTIAL INFORMATION AND PROPRIETY INTEREST AGREEMENT* for lack of consideration and its violation of Tex. Bus. & Com. Code § 15.50. Additionally, Hamill seeks summary judgment for no evidence as to Exhibitgroup and Viad's claims of Misappropriation of Trade Secrets and Confidential Information Under the Inevitable or Probable Disclosure Doctrine, Actual Confidential/Proprietary Information and Trade Secrets Misappropriation, Tortuous Interference with Contract, Wrongful Interference with Prospective Contract/Business Relations, Unfair Competition Count I, Breach of Duty of Loyalty as well as Fiduciary Duty, Civil Conspiracy, and Breach of Contract Counts I, II, and III.

### I. Introduction

1.     Plaintiff/Counterclaim-Defendant is Rob J. McCoy; Exhibitgroup/Giltspur, Inc. and Viad Corp are Defendants/Counterclaim-Plaintiffs.

2.     On or about December 1, 2003, McCoy filed against Exhibitgroup and Viad his "Original Petition for Declaratory Judgment" ("Original Petition"), as well as his "Application for Temporary Restraining Order and Temporary Injunction." Said pleadings were filed in the 116th District Court of Dallas County, Texas.

3.    On or about December 17, 2003, Exhibitgroup and Viad filed in the State Court their "Verified Denial, Affirmative Defense and Original Answer to Plaintiff's Original Petition."

4.    On or about December 23, 2003, Exhibitgroup and Viad timely filed with this Court their "Notice of Removal."

5.    On January 14, 2004, Exhibitgroup and Viad filed a counterclaim against Rob J. McCoy ("McCoy") and also asserted crossclaims in the Action against STAK Design, Inc. ("STAK"), Stanley Zalenski ("Zalenski"), Donald Arient ("Arient"), Donald Barker ("Barker"), John Buhler ("Buhler"), Garry Cohn ("Cohn"), Michelle Hamill ("Hamill"), Shannon Juett ("Juett"), Loren Wayne Keown ("Keown"), Joachim Moeller "(Moeller"), Andrew C. Ploeger ("Ploeger"), and Marjorie Stacy ("Stacy") (collectively, the "Crossclaim-Defendants"), seeking both monetary damages and injunctive relief for misappropriation of trade secrets, tortious interference with contracts and with prospective business relationships, theft or conversion of corporate opportunity, unfair competition, breaches of various contractual agreements, breaches of fiduciary duties and duties of loyalty, and civil conspiracy.[1]

6.    On June 7, 2004 McCoy filed with this Court his motion for leave to file an amended Complaint. The Court on September 30, 2004 granted McCoy's motion. McCoy in his Amended Complaint asserts against Exhibitgroup, Viad, Kimbra A Fracalossi, Robert Bohannon, John Harrel, Vince Marler, and David Ross two counts for Debts for Wages Owed, Fraud/Intentional Misrepresentation, Conversion of Chattel, Defamation, Tortious Interference with Insurance Contract, Wrongful/Constructive Termination, Civil Conspiracy, violations of the Consolidated Omnibus Budget Reconciliation Act,

---

[1] Viad and Exhibitgroup's Amended Answer and Counter/ Crossclaim.

HAMILL'S BRIEF IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT

Intentional Infliction of Emotional Distress, and sought declaratory relief as to the enforceability of the *Employee Confidential Information and Proprietary Interest Agreement.*

7. Defendants Exhibitgroup and Viad answered McCoy's First Amended Complaint on October 21, 2004.

## II. Statement of Facts

8. Exhibitgroup is a division of Viad. *Amended Answer and Counterclaim* page 5, line 20 (b).

9. Exhibitgroup acquired T.L. Horton in 1998. *Amended Answer and Counterclaim* page 8, line 24 (b).

10. Hamill was employed by Exhibitgroup as an Accounts Manager (App. 2).

11. Hamill resigned her employment from Exhibitgroup on December 22, 2003. (App. 2).

12. Hamill signed Exhibitgroup's *EMPLOYEE CONFIDENTIAL INFORMATION AND PROPRIETARY INTEREST AGREEMENT* on April 14, 2003. (App. 8).

13. Hamill was an at will employee of Exhibitgroup. *See* Viad employment offer (App. 3).

14. Hamill was offered nothing by Exhibitgroup or Viad, other than at will employment, to sign the agreements. (App. 2).

## III. Argument and Authorities

15. Hamill is entitled to summary judgment as a matter of law with respect to Viad's Breach of Contract – Count II, alleging breach of the *EMPLOYEE CONFIDENTIAL INFORMATION AND PROPRIETARY INTEREST AGREEMENT,* for the agreement

lacks consideration and violates Tex. Bus. & Com. Code § 15.50. Further, Hamill is entitled to a no evidence summary judgments with respect to Viad's crossclaims against Hamill for misappropriation of trade secrets and confidential information under the inevitable or probable disclosure doctrine, actual confidential/proprietary information and trade secrets misappropriation, tortuous interference with contract, wrongful interference with prospective contract/business relations,  unfair competition – count I, breach of duty of loyalty as well as fiduciary duty, civil conspiracy, breach of contract – count I, breach of contract – count II, and breach of contract – count III.

16.     Fed.R.Civ.P.56(a) provides "A party seeking to recover upon a claim, counterclaim, or cross-claim or to obtain a declaratory judgment, at any time after the expiration of 20 days from the commencement of the action or after service of a motion for summary judgment by the adverse party, move with or without supporting affidavits for a summary judgment in the party's favor upon all or any part thereof." Fed.R.Civ.P.56(b) provides "A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor upon all or any part thereof."

17.     Summary Judgment is proper when there is no genuine issue of material fact. Fed.R.Civ.P.56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). "A fact is material only if it might affect the outcome of the suit under the governing law, and a dispute about a material fact is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party". *MacDonald v. Delta Air Lines, Inc.,* 94 F.3d

1437, 1440 (10th Cir. 1996).[2] Further, a defendant seeking summary judgment on a plaintiff's claim can demonstrate the absence of a genuine material fact by showing there is no evidence supporting an essential element of plaintiff's claim or presenting evidence that negates the existence of a material element of plaintiff's claim. *J. Geils Band Employees Benefit Plan v. Smith Barney Shearson, Inc.,* 76 F.3d 1245, 1251 (1st Cir. 1996); *see also Celotex Corp.* 477 U.S. at 322-23.

    **A.    Hamill Is Entitled to Summary Judgment on Exhibitgroup and Viad's Counterclaim of Breach of Contract – Count II Alleging Breach of the *Employee Confidential Information and Proprietary Interest Agreement.***

18.    The offer of employment letter (App. 3) states in a footnote as follows:

> "Employment and Compensation can be terminated, with or without cause or notice, at any time at the option of either the Company of the employee."

Hamill was therefore an "at will employee" for the duration of her employment with Defendants.

19.    The *EMPLOYEE CONFIDENTIAL INFORMATION AND PROPRIETY INTEREST AGREEMENT* (App. 4-8) contains the following language in paragraph 6:

> That during and for 12 months after my employment with THE COMPANY, I will not directly or indirectly solicit or induce any employee, supplier, contractor, consultant or representative of THE COMPANY to terminate their or its relationship with THE COMPANY

20.    This non-solicitation agreement is, as a matter of law, unenforceable. No consideration was given to Hamill upon her execution of the agreement. (App. 2) Additionally, the agreement is not ancillary to or part of an otherwise enforceable

---

[2] *See also Hickson Corp. v. Northern Crossarm Co.,* 357 F.3d 1256, 1259 (11th Cir.2004); *Hawkspere Shipping Co. v. Intamex,* 390 F.3d 225, 232 (4th Cir.2003)

agreement at the time the agreement was made in contravention of Tex. Bus. & Com. Code § 15.50.

### i. The *EMPLOYEE CONFIDENTIAL INFORMATION AND PROPRIETY INTEREST AGREEMENT* is unenforceable due to lack of consideration.

21. To be enforceable a contract must contain valid consideration. *Texas Gas Utilities Co. v. Barrett*, 460 S.W.2d 409, 412 (Tex. 1970). Or, in other words, a contract must have a "mutuality of obligation." *Id.* Consideration can consist of either a benefit to the promisor or a detriment to the promisee. *Fort Worth Independent School District v. City of Fort Worth*, 22 S.W.3d 831, 841 (Tex. 2000). To acquire a "benefit," the promisor must acquire some legal right, in exchange for his promise, that he would not have otherwise been entitled. *Northern Natural Gas v. Conoco, Inc.*, 986 S.W.2d 603, 607 (Tex. 1999). Likewise, to suffer a "detriment," the promisee, in return for his promise, must give up a legal right that his would otherwise have been entitled to perform. *Security Drilling Co. v. Rathke Oil Co.*, 41 S.W.2d 1019, 1022 (Tex. App. 1931).

22. For the *EMPLOYEE CONFIDENTIAL INFORMATION AND PROPRIETY INTEREST AGREEMENT* to be valid, the promisor, Hamill, must have experienced a legal "benefit." *Northern Natural Gas*, 986 S.W.2d at 607. Similarly, the promisee, Viad, must have incurred a legal "detriment." *Security Drilling*, 41 S.W.2d at 1022. However, while Hamill was employed by the Defendants, she was undisputedly an "at will" employee. Thus, by definition the promisor did not gain any legal "benefit," and the promisees did not incur any legal "detriment" so as to constitute valid consideration. *Miller Paper Co. v. Roberts Paper Co.*, 901 S.W.2d 593, 599. (Tex.App.-Amarillo,

1995). Consideration is lacking in relation to the *EMPLOYEE CONFIDENTIAL INFORMATION, NON-COMPETE, AND PROPRIETY INTEREST AGREEMENT*, thus the purported non-solicitation agreement is not enforceable.

> **ii. The non-solicitation provision found in the *EMPLOYEE CONFIDENTIAL INFORMATION AND PROPRIETY INTEREST* AGREEMENT is unenforceable under Tex. Bus. & Com. Code § 15.50 in that it is not ancillary to or part of an otherwise enforceable agreement at the time the agreement was made.**

23.    The non-solicitation provision of the *EMPLOYEE CONFIDENTIAL INFORMATION AND PROPRIETY INTEREST AGREEMENT* is invalid and unenforceable under Tex. Bus. & Com. Code § 15.50 in that it is not ancillary to or part of an otherwise enforceable agreement at the time the agreement was made and it also imposes a greater restraint than is necessary to protect the goodwill or other business interest of the of the promisee.

> Tex. Bus. & Com. Code § 15.50 (2004) provides, in relevant part, as follows:
>
> § 15.50. Criteria for Enforceability of Covenants Not to Compete (a) Notwithstanding Section 15.05 of this code, and subject to any applicable provision of Subsection (b) [applying only to physicians], a covenant not to compete is enforceable if it is *ancillary to or part of an otherwise enforceable agreement at the time the agreement is made to the extent that it contains limitations as to time, geographical area, and scope of activity* to be restrained that are reasonable *and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee.* [emphasis supplied].

24.    Texas law treats non-solicitation agreements generally the same as non-compete agreements. *Miller Paper Co. v. Roberts Paper Co.*, 901 S.W.2d 593, 599-600 (Tex. App. 1995); *American Express Fin. Advisors, Inc. v. Scott*, 955 F. Supp. 688 (N.D. Tex. 1996). A provision restricting solicitation of former employees and customers restrains trade and constitutes a covenant not to compete., *Olander v. Compass Bank,* 172 F. Supp.

2d 846 (S.D. Tex. 2001). However, when non-solicitation of employees is the only restricted activity, the provision will not be subject to Tex. Bus. & Com. Code § 15.50. See *Totino v. Alexander & Assocs.*, 1998-2 Trade Cas. (CCH) P72,253 (Tex.App.-Houston).

25.   The *EMPLOYEE CONFIDENTIAL INFORMATION AND PROPRIETY INTEREST* AGREEMENT contains restrictions of solicitation *not simply to employees* but also suppliers, contractors, consultants, and representatives of Viad. The agreement goes far beyond solicitation of employees as found in *Totino*. *Totino* narrowly allows the employee non-solicitation agreement to fall outside § 15.50 because it does not necessarily restrict a former employees ability to compete with his or her former employer, thus the agreements do not significantly restrain trade. *Id. At 33.*

26.   Judge Solis' prior discussion, in the Memorandum Opinion and Order of April 27, 2004, of *Totino* and the agreement at hand proclaims the Viad non-solicitation is not similar to that in M*iller Paper*, and thus should not come under§ 15.50, because it "has no such restraining effect on trade, commerce, or competition."[3]   However, in this non-solicitation agreement, Hamill is prevented from using suppliers, contractors, and consultants, who are all by definition not Viad employees. Such restraints must be considered to significantly restrain trade, commerce, or competition due to the nature and small size of the tradeshow and kiosks business. Therefore, the non-solicitation agreement at issue here should be treated as a non-compete agreement and fall subject to Tex. Bus. & Com. Code § 15.50.

27.   When examining covenants not to compete for enforceability, Section 15.50 requires two initial inquiries: (i) Is there an otherwise enforceable agreement, to which

---

[3] Memorandum Opinion and Order, April 27, 2004, Judge Jorge A. Solis. Page 7, line 13.

(ii) the covenant not to compete is ancillary at the time the agreement was made. *See Light v. Centel Celluar Co.*, 883 S.W.2d 642, 644 (Tex. 1994).

28.     There was no otherwise enforceable agreement. Hamill was an "at will" employee by admission of Defendants. "At will" employment standing alone does not constitute an "otherwise enforceable agreement" because it is not binding on either the employee or employer. *Martin v. Credit Protection Ass'n, Inc.*, 793 S.W.2d 667, 670 (Tex. 1990). Hamill received nothing in consideration other than illusory promises generally associated with such "at will" employment relationships. Defendants obligated themselves to provide nothing in exchange to Hamill for the purported covenant not to compete.

29.     As to the second inquiry, it must be determined whether the covenant not to compete was ancillary to an enforceable agreement at the time the agreement was made. *Light*, 883 S.W.2d at 644.  In order for the covenant to be ancillary to an otherwise enforceable agreement between employer and employee, (1) the consideration given by the employer in the otherwise enforceable agreement must give rise to the employer's interest in restraining the employee from competing; and (2) the covenant must be designed to enforce the employee's consideration or return promise in the otherwise enforceable agreement. *Id.* at 647. There is not an otherwise enforceable agreement in the instant case, and even if the illusory promise to provide trade secrets or other confidential information is found to be consideration, it was not designed to further the Defendants' interests in the non-competition of "at will" employees.

30.     There is no language in the document signed by Hamill that would lead one to conclude that the Hamill had agreed not to compete in exchange for the Defendants'

promise to provide trade secrets or confidential information. Furthermore, the non-compete agreement were signed after Hamill started her employment and after already acquiring any information he was to receive from the Defendants. "Past consideration cannot serve as the basis for an otherwise enforceable agreement." *Tom James of Dallas, Inc. v. Cobb,* 109 S.W.3d 877 (Tex. App. 2003).

> **B.**     **There is No Evidence to Support Viad's Contention that Its "Trade Secrets" are in Fact Trade Secrets.**

31.     Viad has designated its confidential/proprietary information and trade secrets to include[4]:

> 1.     Lists that contain a variety of information about Exhibitgroup's exhibit and kiosk customers such as: (a) who these customers are and where they are located; (b) what customers personnel are involved in decision-making concerning Exhibitgroup's products; (c) how much money customers have placed in orders with Exhibitgroup in the past; (d) how much money customers are projected to spend on Exhibitgroup products in the future; (e) the volume of products purchased in the past, and expected to be purchased in the future from Exhibitgroup by its customers; and (f) the specific types and specifications of products of purchased by these customers in the past, and expected to be purchased from Exhibitgroup in the future.

> 2.     Charts and schedules showing such things as: (a) the amount of total revenue projected from each customer and potential customer, (b) the amount of revenue projected from each customer and potential customer for construction of exhibits and kiosks, refurbishment of same, installation at malls, tradeshows and conventions; and (c) logistics.

> 3.     Price list for each product produced and sold by Exhibitgroup. This includes prices for each part and accessory which could be built into or added on the products, as well as retail merchandise price lists for such items.

Additionally, Viad specifically designated what it terms are its Specific Proprietary/Confidential Information and Trade Secrets:[5]

---

[4] Viad's Amended Answer and Counterclaim 24 d 1-3.

**Forecasts and Sales Plans**: Confidential/proprietary information and trade secrets here include both the forms themselves, which were developed by Exhibitgroup, and the information contained on them. These consist of names of customers and potential customers, and based on Exhibitgroup's dealings with these entities, knowledge of which ones are planning to purchase new kiosk or exhibits, or to upgrade shopping centers, which might include the refurbishment of old kiosks or the manufacture and sale of new ones.

**Kiosks Body Types**: Included in the confidential/proprietary information and trade secrets posses by Exhibitgroup is knowledge of customer preferences in kiosks for their shopping mall properties as well as for tradeshow/convention exhibits, and the various body types of kiosks and exhibits owned by customers, along with the accessories which the customers have purchased. From this information Exhibitgroup can target customers for new or different products and accessories.

**Estimating Documents and Information**:   Additional confidential/proprietary information and trade secrets involved in this litigation are: (1) "Excel spreadsheets" which contain information concerning Exhibitgroup's different types of kiosk/exhibits and accessories; (2) information concerning proposals to customers for kiosks and exhibits, both those which have been successful and those which have not been successful in the past but might be in the future; (3) information about pricing of Exhibitgroup's products and its profit margins; (4) Project Approval Evaluation forms, upon which is recorded such information as how pricing of products is broken down into the various aspects of its costs (*e.g.* construction, graphics, freight, rentals, storage, ect.), cost of sales (material, subcontracting, labor, manufacturing overhead, operating income, and the profit margin of each proposed customer project); (5) Price Analysis Reports which further refine Exhibitgroup's pricing of projects; and (6) inventories of kiosk parts, which allow Exhibitgroup efficiently to purchase items needed to be brought or manufactured for all kiosks, and also which expedite the productions of typical units re-purchased by customers.

**Small Parts Lists**: These documents record those parts required for their products sold to customers, organized by kiosk type. They constitute valuable confidential/proprietary information and trade secrets.

---

[5] Viad Amended Complaint and Counterclaim 25 a – m.

**Financial Information:** At great cost and effort, Exhibitgroup has developed specific documents and forms which it uses to record and track its financial performances, customer sales and profit margins, customer accounts receivables, and financial statements involving both Horton and Exhibitgroup. These documents and techniques are valuable confidential/proprietary information and trade secrets.

**Product Design Information:** Over the years Exhibitgroup has developed, stored, and maintained, in a variety of formats, detailed product design information regarding its products. This includes: (1) client preferences for material, functionality, and kiosks type; (2) design simplification information, as well as data which correct problems o earlier model runs; and (3) new accessories designed for and targeted to specialty mall leasing managers, which assist in the display of product and enhance revenue. These designs and related information are valuable confidential/proprietary information and trade secrets.

**Customer Assisted Design Drawings and Information:** Exhibitgroup's confidential/proprietary information and trade secrets also include computer programs which it has developed and or purchased and modified to meet its specification, that are used to transition from product design to the manufacturing process. This includes "Computer Numeric Control" programs which automatically cut parts in the manufacturing process, both cheaply and expeditiously, once the computer-assisted design drawings are complete. Such drawings increase Exhibitgroup's product development speed and assist in inventory control.

**Cut Tickets:** Exhibitgroup uses a system of "Cut Tickets" to document, organize and manage the data required by shop personnel to mill the substrates used in the manufacturing of its various products. Cut Tickets are in written and electronic form and contain specific information unique to each product to be manufactured. Possession of an Exhibitgroup Cut List would provide the information required recreating a product or accessories requiring a specific relationship to that product such as replacement shelves or security covers. They are Trade Secrets.

**Vendor Information:** Other confidential/proprietary information and trade secrets consists of lists with whom Exhibitgroup has longstanding relationships and understandings. This also includes prices charged to Exhibitgroup by vendors for various items and services, typical "lead times" for these vendors, and vendor

capabilities which (among other things) can eliminate the necessity for Exhibitgroup to invest in certain shop equipment.

**Items Specific to the Exhibit Business**: Included in the confidential/proprietary information and trade secrets owned by Exhibitgroup are such things as (1) historical exhibit field service orders by customer, which give detailed cost and pricing information; (2) set-up drawings for customers' exhibits; (3) customer inventory list, which combined with field service orders and set-up drawings, allow Exhibitgroup to quickly and efficiently erect exhibits at tradeshows and conventions; (4) previous client booth layouts, client inventory notebooks, and other information; (5) documents and information concerning third-party vendors who directly service the customer exhibits such as telephone set-ups, florists, and electrical work; and (6) information used by Exhibitgroup to assist customers in dealing with exposition service personnel and general contractors.

**Mall Information**: Exhibitgroup has developed a great deal of marketing and related information which includes ,all layout, color and design scheme, age, target shopping market, store leases that govern kiosk numbers and placement, and the quality and type of kiosk currently owned by the customer (which would include those kiosks supplied by Exhibitgroup's competitors). All of this constitutes confidential/proprietary information and trade secrets.

Standardized Internal Processes; Exhibitgroup has developed a wide variety of internal controls, policies, and procedures, ect., which ensure that employees receive correct and timely information. This material is valuable confidential/proprietary information and trade secrets.

**Personnel Information**: Among Exhibitgroup's most prized confidential/proprietary information and trade secrets is information concerning its employees. Much of Exhibitgroup's business is segmented with various employees developing specialties in performing crucial functions. For example, some have developed expertise in painting and cutting techniques. Others are knowledgeable in assembly techniques and such things as cut tickets. Still others have, at Exhibitgroup's great expense, developed and maintained relationships with customers, potential customers, and vendors.

32.    Before information can in fact be a "trade secret" there must be a substantial element of secrecy. *Trilogy Software, Inc., v. Yinghui Li,* 143 S.W.3d 452, 467 (Tex.App

– Austin 2004). "'It is … the burden of the party claiming secrecy status to prove secrecy.' – or in this case (summary judgment proceeding) to provide more than a scintilla of evidence to support its claim" *Trilogy Software*, S.W.2d at 467 (citing *Stewart Stevenson Services, Inc. v. Serv-Tech, Inc.*, 879 S.W.22 89, 99 (Tex.App. - Houston 1994, in turn citing *Richardson v. Andrews*, 718 S.W.2d 833 (Tex.App. – Houston 1986, *no writ)*.

33.     Six criteria are considered for the determination of a trade secret protected from disclosure: (1) the extent to which the information is known outside the business; (2) the extent to which it is known by employees and others involved in the business; (3) the extent of measures taken to safeguard the secrecy of the information; (4) the value of the information to him and his competitors; (5) the amount of effort or money expended in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others. *General Universal Sysytems, Inc., et. al v. Larry Mason Lee, et. al* 379 F.3d 131, 41 (5th Cir. 2004).

34.     With respect to each "trade secret" claimed, Viad has produced no evidence as to the existence and application of each factor to each of the claimed trade secrets to show that the above designated "trade secrets", or any other claimed trade secrets of Viad, are in fact trade secrets. Summary Judgment should be granted against Viad as to each claimed trade secret for no evidence.

### C.     Hamill Is Entitled to a No Evidence Summary Judgment on Viad's Claim of Misappropriation of Trade Secrets and Confidential Information Under the Inevitable or Probable Disclosure Doctrine.

35.     There are no Texas cases recognizing misappropriation of trade secrets and confidential information under the inevitable disclosure doctrine as an actionable tort. *See*

*Cardinal Health Staffing Network, Inc. v. Bowen*, 106 S.W.3d 230, 242 (Tex. App.--Houston [1st Dist.] 2003, no pet.), *citing, Conley v. DSC Communications Corp.*, 1999 Tex. App. LEXIS 1321, No. 05-98-01051- CV, 1999 WL 89955, at *3 (Tex. App.--Dallas Feb. 24, 1999, no pet.) (not designated for publication). However, the Dallas Court of Appeals has adopted misappropriation of trade secrets and confidential information under the probable disclosure doctrine. *See Rugen v. Interactive Bus. Sys., Inc.*, 864 S.W.2d 548, 552 (Tex. App.—Dallas 1993, no writ). *Rugen* requires for the plaintiff to be successful upon this claim to show: (1) the existence of existence of a trade secret; (2) the defendant knows of the trade secret; (3) probability the defendant will use the trade secret for his benefit or the detriment of his former employer. *See Cardinal Health Staffing Network, Inc.*, 106 S.W.3d 242.

36.     There is no evidence of the existence of a trade secret.

37.     There is no evidence Hamill knows of a trade secret.

38.     There is no evidence Hamill will probably use the trade secret for her benefit or the detriment of Viad.

> **D.     Hamill Is Entitled to a No Evidence Summary Judgment on Viad's Claim of Actual Confidential/Proprietary Information and Trade Secrets Misappropriation**

39.     Misappropriation of trade secrets is a common-law tort, whose elements are: (1) existence of a trade secret; (2) breach of a confidential relationship or improper discovery of a trade secret; (3) the defendant used the trade secret without the plaintiff's authorization; and (4) damages. *See MGE UPS Sys., Inc. v. Fakouri Elec. Eng'g*, No. 4:04-CV-445-Y, 2004 U.S. Dist. LEXIS 19274, *9-10 (N.D. Tex. 2004), *citing, Picker Int'l, Inc. v. Blanton*, 756 F.Supp. 971, 979-80 (N.D. Tex. 1990). *Trilogy Software, Inc. v.*

*Calidus Software et al.,* 143 S.W.3d 452 (Tex.App. – Austin 2004); *Taco Cabana Int'l v. Two Pesos, Inc.,* 932 F.2d 1113, 1123 (5th Cir. 1991).

40.     There is no evidence of the existence of a trade secret.

41.     There is no evidence that Hamill breached a confidential relationship.

42.     There is no evidence that Hamill used Viad's trade secrets without Viad's authorization.

43.     There is no evidence that Viad was damaged by Hamill's alleged use of Viad's alleged trade secrets.

>     **E.      Hamill Is Entitled to a No Evidence Summary Judgment on Viad's Claim of Tortuous Interference with Contract.**

44.     The elements of tortuous interference with contract are: (1) the plaintiff has a valid contract; (2) the defendant willfully and intentionally interfered with the contract; (3) the interference was a proximate cause of the plaintiff's injury; and (4) the plaintiff incurred actual damage or loss. *Butnaru v. Ford Motor Co.,* 84 S.W.3d 198 (Tex.2002).

45.     There is no evidence that Viad has a valid contract.

46.     There is no evidence that Hamill willfully and intentionally interfered with Viad's contract.

47.     There is no evidence Hamill's interference was a proximate cause of the Viad's injury.

48.     There is no evidence Viad incurred actual damage or loss.

>     **F.      Hamill Is Entitled to a No Evidence Summary Judgment on Viad's Claim of Wrongful Interference with Prospective Contract/Business Relations.**

49.     The elements of Wrongful Interference with Prospective Contract/Business Relations are: (1) there was a reasonable probability that the plaintiff would have entered

into a business relationship with a third person; (2) the defendant intentionally interfered with the relationship; (3) the defendant's conduct was independently tortious or unlawful; (4) the interference was the proximate cause of plaintiff's injury; and (5) the plaintiff suffered actual damage or loss. *See Wal-Mart Stores v. Sturges,* 52 S.W.3d 711, 726 (Tex.2001) (element 3); *Bradford v. Vento,* 48 S.W.3d 749, 757 (Tex.2001)(element 2); *Baty v. Protech Ins. Co.,* 63 S.W.3d 841, 859-60 (Tex.App. – Houston [14th Dist.] 2001, pet. denied)(elements 1-3, 5); *Winston v. American Med. Int'l, Inc.,* 930 S.W.2d 945, 953 (Tex.App. – Houston [1st. Dist.] 1996, no writ)(element 4).

50.    There is no evidence there was a reasonable probability that Viad would have entered into a business relationship with a third party.

51.    There is no evidence Hamill, individually and collectively with the Crossclaim Defendants, intentionally interfered with Viad's relationship(s).

52.    There is no evidence Hamill's, individually and collectively with the Crossclaim Defendants, conduct was independently tortious or unlawful.

53.    There is no evidence Hamill's, individually and collectively with the Crossclaim Defendants, interference was the proximate cause of Viad's injury.

54.    There is no evidence Viad suffered actual damage or loss.

### G.    Hamill Is Entitled to a No Evidence Summary Judgment on Viad's Claim of Unfair Competition – Count I.

55.    Unfair Competition is the umbrella for all statutory and nonstatutory causes of action arising out of business conduct which is contrary to honest practice in industrial and commercial matters. *Minka Lighting, Inc. v. Craftmade International Inc.,* 2002 U.S. Dist. LEXIS 19791 (N.D. Tex. 2002). The elements of unfair competition require: (1) the defendant commit a separate unlawful act; (2) the act of the defendant interfered with the

plaintiff's ability to conduct his business; and (3) such interference was improper. *See Taylor Publishing Co. v. Jostens, Inc.*, 36 F. Supp.2d 360, 374 (E.D. Tex. 1999), *quoting, Continental Airlines, Inc. v. American Airlines, Inc., 824 F. Supp. 689, 694 (S.D. Tex. 1993).*

56.     There is no evidence Hamill committed a separate unlawful act.

57.     There is no evidence Hamill's act interfered with Viad's ability to conduct its business.

58.     There is no evidence such interference was improper.

> **H.     Hamill Is Entitled to a No Evidence Summary Judgment on Viad's Claim of Breach of Duty of Loyalty as well as Fiduciary Duty.**

59.     The elements of breach of fiduciary duty are: (1) the plaintiff and defendant had a fiduciary relationship; (2) the defendant breached its fiduciary duty to the plaintiff; and (3) the defendant's breach resulted in (a) injury to the plaintiff or (b) benefit to the defendant. *See Burrow v. Acre,* 997 S.W.2d 229, 237 (Tex.1999) (element 2; *Kinzbach Tool Co. v. Corbett-Wallace Corp.,* 160 S.W.2d 509, 513-14 (Tex.1942) (elements 1-2, 3(b); *Hawthorne v. Guenther*, 917 S.W.2d 924, 934-35 (Tex.App. – Beaumont 1996, writ denied) (elements 1-3).

60.     There is no evidence Viad and Hamill had a fiduciary relationship.

61.     There is no evidence Hamill breached her duty to Viad.

62.     There is no evidence Hamill's breach resulted in either injury to Viad or benefit to Hamill.

> **I.     Hamill Is Entitled to a No Evidence Summary Judgment on Viad's Claim of Civil Conspiracy.**

63      The elements of civil conspiracy are: (1) the defendant was a member of a combination of two or more persons; (2) the object of the combination was to accomplish either (a) an unlawful object or (b) a lawful purpose by unlawful means; (3) the members had a meeting of the minds on the object or course of action; (4) one of the members committed an unlawful, overt act to further the object or course of action; and (5) the plaintiff suffered injury as a proximate result. *Insurance Co. of N. Am. v. Morris,* 981 S.W.2d 667, 675 (Tex.1998).

64.     There is no evidence Hamill was a member or a combination of two or more persons.

65.     There is no evidence the object of the combination was to accomplish an unlawful object or a lawful purpose by unlawful means.

66.     There is no evidence the members had a meeting of the minds on the object or course of action.

67.     There is no evidence one of the members committed an unlawful, overt act to further the object or course of action.

68.     There is no evidence Viad suffered injury as a proximate result.

> **J.      Hamill Is Entitled to a No Evidence Summary Judgment on Viad's Claim of Breach of Contract – Count I.**

69.     Viad's Claim of Breach of Contract – Count I is premised upon purported breaches of Viad's "Viad Corp. Code of Corporate Conduct." The elements of breach of contract are: (1) the existence of a valid, enforceable contract; (2) privity between the plaintiff and defendant; (3) the plaintiff performed, tendered performance, or was excused from performing its contractual obligations; (4) the defendant breached the contract; and (5) the defendant's breach caused the plaintiff injury. *Southwell V.*

*University of the incarnate Word*, 974S.W.2d 351, 354-55 (Tex.App. – San Antonio 1998, pet. denied) (elements 1, 3-5); *C&C Partners v. Sun Exploration & Prod.*, 783 S.W.2d 707, 721 (Tex.App. – Dallas 1989, writ denied) (element 2).

70.   There is no evidence as to the existence of a valid, enforceable contract.

71.   There is no evidence there is privity between Viad and Hamill.

72.   There is no evidence Viad performed, tendered performance, or was excused from performing its contractual obligations.

73.   There is no evidence that Hamill breached the contract.

74.   There is no evidence Hamill's breach caused Viad's injury.

> **K.     Hamill Is Entitled to a No Evidence Summary Judgment on Viad's Claim of Breach of Contract – Count II.**

75.   Viad's Claim of Breach of Contract – Count II is premised upon purported breaches of Viad's "Employee Confidential Information and Proprietary Interest Agreement(s)," its "Use of Company-Owned and Issued Computer Systems Agreement(s)," and its "Employee's Patent and Trade Secret Agreements(s).". The elements of breach of contract are: (1) the existence of a valid, enforceable contract; (2) privity between the plaintiff and defendant; (3) the plaintiff performed, tendered performance, or was excused from performing its contractual obligations; (4) the defendant breached the contract; and (5) the defendant's breach caused the plaintiff injury. *Southwell V. University of the incarnate Word*, 974S.W.2d 351, 354-55 (Tex.App. – San Antonio 1998, pet. denied) (elements 1, 3-5); *C&C Partners v. Sun Exploration & Prod.*, 783 S.W.2d 707, 721 (Tex.App. – Dallas 1989, writ denied) (element 2).

76.   There is no evidence as to the existence of a valid, enforceable contract.

77.   There is no evidence there is privity between Viad and Hamill.

78.    There is no evidence Viad performed, tendered performance, or was excused from performing its contractual obligations.

79.    There is no evidence that Hamill breached the contract.

80.    There is no evidence Hamill's breach caused Viad's injury.

> **L.    Hamill Is Entitled to a No Evidence Summary Judgment on Viad's Claim of Breach of Contract – Count III.**

81.    Viad's Claim of Breach of Contract – Count III is premised upon purported breaches of Viad's "Always Honest Manual," its "Employee Handbook," and its "Employee Guide." The elements of breach of contract are: (1) the existence of a valid, enforceable contract; (2) privity between the plaintiff and defendant; (3) the plaintiff performed, tendered performance, or was excused from performing its contractual obligations; (4) the defendant breached the contract; and (5) the defendant's breach caused the plaintiff injury. *Southwell V. University of the incarnate Word*, 974S.W.2d 351, 354-55 (Tex.App. – San Antonio 1998, pet. denied) (elements 1, 3-5); *C&C Partners v. Sun Exploration & Prod.*, 783 S.W.2d 707, 721 (Tex.App. – Dallas 1989, writ denied) (element 2).

82.    There is no evidence as to the existence of a valid, enforceable contract.

83.    There is no evidence there is privity between Viad and Hamill.

84.    There is no evidence Viad performed, tendered performance, or was excused from performing its contractual obligations.

85.    There is no evidence that Hamill breached the contract.

86.    There is no evidence Hamill's breach caused Viad's injury.

### IV. Prayer

87.    In view of the evidence, arguments, and authorities presented above, there is no genuine issue as to any material fact regarding Exhibitgroup's and Viad's claims. Therefore, Hamill prays the Court grant summary judgment against Exhibitgroup and Viad on their claim of Breach of Contract – Count II as the *EMPLOYEE CONFIDENTIAL INFORMATION AND PROPRIETARY INTEREST AGREEMENT* is unenforceable. Additionally, Hamill prays the Court grant summary judgment against Exhibitgroup and Viad for no evidence on their claims of Misappropriation of Trade Secrets and Confidential Information Under the Inevitable or Probable Disclosure Doctrine, Actual Confidential/Proprietary Information and Trade Secrets Misappropriation, Tortuous Interference with Contract, Wrongful Interference with Prospective Contract/Business Relations, Unfair Competition Count I, Breach of Duty of Loyalty as well as Fiduciary Duty, Civil Conspiracy, and Breach of Contract Counts I, II, and III.

Respectfully submitted,

Zisman Law Firm, P.C.

By: _____
    Barry S. Zisman
    Texas Bar No. 22279350
    Brian Cuban
    Texas Bar No. 05201250
    Holly E. Fuller
    Texas Bar No. 01518250
    Charles C. Ferguson, II
    Texas Bar No. 24045867
    Scott G. Robelen
    Texas Bar No. 16990045
    1412 Main Street
    Twenty-Third Floor

Dallas, Texas  75202
Tel. (214)745-1300
Fax (214)720-0748

Attorneys for Plaintiff Rob J. McCoy  and
Crossclaim Defendants  STAK Design, Inc.,
Stanley Zalenski, Donald Arient, Donald Barker,
John Buhler, Garry Cohn, Michelle Hamill,
Shannon Juett, Loren Wayne Keown, Joachim
Moeller, Andrew C. Ploeger, and Marjorie Stacy

OF COUNSEL:

Paul V. Storm
Texas Bar No. 19325350
John W. MacPete
Texas Bar No. 00791156
Storm, L.L.P.
901 Main Street, Suite 7100
Dallas, Texas 75202
Tele. (214) 347-4751
Fax (214) 347-4799

## CERTIFICATE OF SERVICE

I hereby certify that on _1st_ day of March, 2005, a true and correct copy of the foregoing was served on Defendant/Counter/Crossclaim-Plaintiff's counsel, Richard Kobdish, Fulbright & Jaworksi, L.L.P., by facsimilie, hand delivery and/or cetified mail, return receipt requested at 2200 Ross Avenue, Suite 2800, Dallas, Texas 75201-2784.